| | |
|---|---|
| **From:** | Secure.Report <secure.report.500@proton.me> |
| **Sent:** | Tuesday, January 7, 2025 11:50 AM |
| **To:** | REDACTED |

| | |
|---|---|
| **Subject:** | |
| **Attachments:** | Jan 6 2025 - Scheduling Hearing.m4a |

Share with all you know that are affected to take action!

**Scheduling Conference Update:**

(0:49 - 1:16)
So, I, it was just me that was late, thank you very much for your patience. If I may, Your Honor, both of these cases involve a covert termination program, and they both involve similar witnesses. So, they're related in that respect that they have similar factual underpinnings and similar questions of loss.

(1:30 - 2:01)

(2:34 - 2:58)
Whether there was an inappropriate employee conduct, and really more interesting cases where there's a disguise, you know, in the application, and remember that it's been gone on in a year and so forth. So, this is a very different kind of case, and I don't want to waste all your gentlemen and ladies time for coming here this morning. I'm thinking what we could do is set a schedule, and then I would have it redrawn, or alternatively, I could just have it redrawn.

(2:34 - 2:58)
Basically, a darker schedule that you have in here. Does anyone feel like the data, you know, I'm going to lose this period of time because someone else gets the data. There are just two minor points of disagreement.

(4:11 - 4:30)
Is that acceptable? At least it's kick-starting it, and everybody is sort of turning over their docks, and then we'll leave it to the new judge. It could be me again. But we'll set it up with the new attorneys and the new parties and that sort of thing.

(4:30 - 5:14)
So, I think that all of the disclosures will be produced on January 24th, and then we'll just order the court to redraw the case, and they can set the new schedule each time you're starting to produce documents, and I think that probably makes the most sense at this point. I just looked at Sam's case, and I realized it was like different plaintiffs, but it was not similar enough for me. It's no longer in front of me.

(5:14 - 5:17)
Okay. That sounds great. I have it on the whole thing.

(5:17 - 6:11)
Is it worth it for everybody to sign this global settlement of everything to make it go away or do we need some disclosures? Yeah. Maybe I'll give it again and see all you wonderful people in the new year, or maybe it won't be, but in any event, we'll at least get the initial documents. I suggest you also include it for the new people you're planning on.

(6:11 - 6:24)
So, happy new year. Maybe I'll catch you in a few weeks. One procedural question.

(6:27 - 6:45)
Opposition to the motion to amend that we've been serving for, will the redrawing process still be going on? No. The redrawing process is really a pretty quick process.

| Name | Position/Role | Contact Information |
|---|---|---|
| Robert Carlile | Chairman of the Board | REDACTED |
| Jeffrey Musser | President, CEO, and Board Member | |
| Glenn Alger | Board Member | |

| | | |
|---|---|---|
| Jim DuBois | Board Member | **REDACTED** |
| Mark Emmert | Board Member | |
| Diane Gulyas | Board Member | |
| Brandon Pedersen | Board Member | |
| Liane Pelletier | Board Member | |
| Olivia Polius | Board Member | |
| Kevin Osborn | Vice President, Associate General Counsel, Chief Ethics & Compliance Officer | |
| Matt Littleton | District Manager, Expeditors Atlanta | |
| Jennifer Williams | Branch Manager, Expeditors Atlanta | |
| Pat Duffy | Regional Vice President, Expeditors Atlanta | |
| **To Report Findings** | | **SEC**: Email: help@sec.gov (File Number HO:01434076) |
| | | **EEOC**: Incident Number 241218-000230 |

On Sunday, January 5th, 2025 at 8:45 AM, Secure.Report <secure.report.500@proton.me> wrote:

**Esteemed Industry Experts,**

This story will soon be national and international news. This needs to get out to clients, especially those with denied cyber claims and unsatisfactory resolution to additional, fraudulent invoicing. *Great material for your sales presentations alerting clients in the market.*

Recent disclosures have implicated senior leadership at Expeditors International in one of the most far-reaching cases of fraud and retaliation in the logistics industry. *At the heart of this scandal are three key figures:*

**Matt Littleton**, Atlanta District Manager (DM); **Pat Duffy**, Mid-Atlantic Regional Vice President (RVP); and **Jennifer Williams**, Atlanta Branch Manager (BM). Their coordinated actions have not only destabilized operations but also shattered trust across the organization and its clients.

3

Under **Matt Littleton's** leadership as Atlanta DM, the Ellenwood, Georgia branch became a hub for **fraudulent invoicing practices**, inflating bills and misleading clients to generate millions in illegitimate revenue. **These schemes were normalized through his oversight**, undermining client confidence and exposing systemic failings in financial controls.

**Pat Duffy**, overseeing the Mid-Atlantic region as RVP, is accused of **failing to prevent or address these glaring governance issues**. His role as a senior leader placed him at the intersection of oversight and action, yet **he allowed these fraudulent practices to persist unchecked**, signaling complicity or gross negligence in managing his region.

**Jennifer Williams**, as Atlanta BM, played a pivotal role in **operational misconduct**. Her department spearheaded efforts to **fabricate performance records and enforce unjustified terminations**, targeting whistleblowers and employees who raised concerns about the fraudulent practices. Employees were subjected to **coercion, intimidation, and retaliatory demands**, including fabricated financial repayments designed to silence dissent.

Together, these leaders executed a toxic playbook of **"Deny, Depose, Defend,"  systematically suppressing accountability and prioritizing profits over integrity**. Their actions have left a trail of **broken trust with clients, demoralized employees, and a logistics industry questioning the foundation of one of its largest players**.

As regulators and whistleblowers intensify their efforts, the legacy of **Matt**, **Pat**, and **Jennifer** will be one of **betrayal, corruption, and the ultimate collapse of ethical leadership**. Their actions have irreparably damaged Expeditors' reputation, with the industry watching closely as the fallout continues.

An example of the full and total financial manipulation engineered by Jennifer Williams, Expeditors Atlanta Branch Manager.

| Dept | AP Absorbs | BNP Sweeps | DPL | Reserve Absorb | New Oct Bad Debt | Bad Debt Rollover | Goodwill | Total Write Offs | Net with BNP |
|---|---|---|---|---|---|---|---|---|---|
| | | *Billed but not paid = overbilled, then taken to revenue, not credited to client* | | | | | | | |
| AIP | (352,923) | 407,439 | (6,572) | (138,249) | (1,073) | - | (2,017) | (500,834) | (93,394) |
| AXP | 45,608 | 68,794 | (10) | (31,931) | (117,694) | (34,612) | - | (138,640) | (69,845) |
| CHB | 176 | 16,519 | 195,060 | (7,904) | (5,428) | (65,555) | (72,444) | 43,905 | 60,424 |
| DST | (575) | 961 | (68,130) | (1,434) | - | - | - | (70,140) | (69,179) |
| OIP | (11,141) | 757,154 | (115,547) | (1,820,424) | (309,122) | (370,876) | (32,247) | (2,659,356) | (1,902,202) |
| OM | (36) | 1,829 | 150 | (2,952) | (809) | (18,245) | (616) | (22,508) | (20,679) |
| OXP | (497) | 215,193 | | (196,434) | (111,394) | (320,158) | (16,235) | (644,718) | (429,525) |
| TSN | (160,927) | 356,933 | (4,950) | (21,744) | (16,323) | (9,473) | - | (213,417) | 143,516 |
| **Grand Total** | **(480,315)** | **1,824,821** | **0** | **(2,221,071)** | **(561,843)** | **(818,919)** | **(123,558)** # | **(4,205,707)** | **(2,380,885)** |

**Kevin Osborn**
**Vice President, Associate General Counsel, Chief Ethics & Compliance Officer**

- REDACTED

- **Location**: Expeditors | Global Headquarters, REDACTED Seattle, WA 98104

---

**Matt Littleton**
**District Manager**

- REDACTED

- **Location**: Expeditors | Atlanta

---

**Jennifer Williams**
**Branch Manager**

- REDACTED

- **Location**: Expeditors | Atlanta

---

**Pat Duffy**
**Regional Vice President**

- REDACTED
- **Location**: Expeditors | Atlanta

- REDACTED

| Framework Element | Frequency of Occurrence | Financial Impact ($M) | Key Violations Documented |
|---|---|---|---|
| Overbilling Tactics | 85 | 150 | Cyberattack-related billing, pass-through costs |
| Engineered Terminations | 40 | 100 | Performance Improvement Plans leading to layoffs |
| Duplicate Invoicing | 65 | 120 | Reallocations under neutral classifications |
| Compliance Failures | 30 | 90 | Unresolved Dangerous Goods violations |
| Inflated Executive Compensation | 55 | 200 | Bonuses tied to manipulated profitability metrics |

| Framework Element | Kohler (Nat'l Union Fire) | iRobot | Carrabes v. Expeditors | Starr Indemnity | POC USA | Williams v. Expeditors | Longshore Update | Keane v. Expeditors | Travelers |
|---|---|---|---|---|---|---|---|---|---|
| Overbilling Practices | Embedded duplicate invoicing tied to withheld payments exceeding $20M; $400K discrepancy corrected | Freight and handling fee inflations disguised as recovery | Covert workforce reduction charges increased severance costs | Insurance overcharges hidden within policy adjustments | Fee mismanagement and systemic failures during cyberattack downtime led to revenue losses | Overbilling linked to retroactive employee settlements | Cargo misrepresentation inflated costs by $3M+ | Termination linked to coerced employment agreements with ambiguous terms | Contractual discrepancies in marine cargo contracts; failure to prevent overboard container loss during transit |
| Inflated Charges | Cyber-recovery surcharges increased client fees by 45%, raising liability claims | Recovery-related charges spiked by 50% | Manipulated severance evaluations added to overall costs | Adjusted claims inflated cargo liabilities | Hidden charges disguised as document surcharges led to client overbilling | Payroll reductions tied to unexplained severance litigation | Logistics manipulation inflated insurer payouts | Discrepancies in severance agreements triggered litigation | Failure to mitigate container loss resulted in $2M+ in damages |
| Duplicate Invoices | Documented systemic duplication in invoicing across $20M in contracts | Audit revealed repeated fee duplications | Ambiguities in severance-related payrolls caused multiple payments | Limited insurance claims revealed similar overcharges | International cargo documentation errors resulted in duplicate billing | Payroll discrepancies flagged in litigation audits | Audit flagged duplicate claims on insurer payouts | Termination package documentation discrepancies raised compliance issues | Contract and invoicing irregularities identified in cross-ocean cargo claims |
| Compliance Failures | Persistent CAPA failures tied to resolution inaccuracies across client operations | Gaps in rectifying overbilling processes and audit controls | Regulatory gaps in addressing workforce contract amendments | Continued failures to validate claims and cargo losses | Weak documentation standards caused recurring disputes | Retaliatory actions against employees breached state compliance laws | Lax procedural controls inflated costs by $3M | Misaligned policies on global assignments exacerbated compliance failures | Non-compliance in carrier agreements increased insurer liabilities |
| Legal and Financial Impact | $40M exposure due to systemic overbilling practices and disputed invoices | $20-30M financial losses accrued over three years | Severance-related disputes amounted to $500K+ in financial penalties | Insurance litigation spans multiple cases with ongoing penalties | Cyberattack mismanagement caused $5M+ in damages to client operations | $1M damages from severance irregularities | Claims exceeding $3M tied to mishandling | Expeditors faced $1M+ in liabilities due to termination disputes | $2M liability linked to container losses at sea; marine contract disputes ongoing |
| Client Trust Impact | Loss of trust from alternative logistics partners due to financial disputes | Clients reconsider partnerships due to inflated billing | Credibility diminished internally and externally | Broader contractual disputes reduced client confidence | Reevaluation of all major contracts; long-term damage to reputation | Allegations of retaliation significantly impacted corporate reputation | Erosion of trust tied to claims processing delays | Relocation coercion damaged employee relations globally | Mishandling marine operations impacted partner trust and reputation |
| Regulatory Scrutiny | SEC and DOJ investigations into profit-driven billing manipulation | DOJ inquiries into inflated recovery charges | Workforce manipulation under review for federal violations | Fraudulent cargo handling processes under oversight | Federal inquiries into cargo mismanagement and liability | Procedural gaps flagged for external federal review | Regional litigation tied to compliance gaps | Global relocation practices under scrutiny for regulatory violations | Active federal oversight into maritime logistics and safety standards |





# Network of Framework Tactics and Impacts

- Suppressed Whistleblowers ← Whistleblower Suppression
- Encouraged Exploitation ← Compensation Manipulation
- Fewer Regulatory Actions ← Regulatory Avoidance
- Overbilling Tactics → Increased Litigation
- Engineered Terminations → Operational Instability
- Data Concealment → Reduced Transparency



*Exhibit C (cont'd) to Affidavit of Matthew J. Lynch*

**Referenced attachment (Jan 6 2025 - Scheduling Hearing.m4a) will be provided to the Court in native form.**