UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL CARRABES,<br><br>                    Plaintiff,<br><br>        v.<br><br>EXPEDITORS INTERNATIONAL OF<br>WASHINGTON, INC.,<br><br>                    Defendant. | Civil Action No. 1:24-cv-12142-AK |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND

Plaintiff Michael Carrabes' ("Plaintiff") Motion for Leave to File First Amended Complaint should be denied because, at its core, Plaintiff's proposed amendment is nothing more than a convoluted attempt to distort his routine employment discrimination claim into a sprawling amalgamation of other unfounded and futile claims. The sheer volume of Plaintiff's 114-page, 369-allegation proposed amended complaint cannot mask these deficiencies and does not provide any factual or legal basis for Plaintiff's proposed claims. As such, his proposed amendment is futile. Moreover, as set forth in detail below, Plaintiff's new factual allegations establish that Plaintiff's claims in his operative complaint (dkt. 1) also fail as a matter of law. As such, Plaintiff's motion to amend should be denied.

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

Plaintiff alleges that Expeditors discriminated against him on the basis of sex by demoting him in favor of a female employee, based upon false concerns about Plaintiff's performance, specifically, his communication issues with direct reports. (Dkt. 1.) Plaintiff also

---

[1] All facts asserted herein are presented for the purposes of this motion only. Expeditors reserves the right to contest all facts asserted by Plaintiff and/or present alternate arguments in future pleadings or motions, and/or at trial.

alleges that these false performance concerns were part of a "covert termination scheme" in which Expeditors sought to reduce headcount by pressuring employees to resign. (Id.) Plaintiff claims that, in his case, this culminated in a February 5, 2024 argument with his immediate supervisor, Tracy Peveri, and her boss, Brian Carrabes, who is Plaintiff's brother. (Id.) Plaintiff alleges that he attended a meeting with Peveri and Brian Carrabes and, after Peveri left the meeting, Brian Carrabes told Plaintiff to "get the fuck out" of his office. (Id.) Based on these allegations, Plaintiff filed a complaint on August 21, 2024 alleging (1) sex discrimination in violation of Title VII; (2) breach of contract; (3) breach of oral contract; (4) wrongful termination; and (5) violation of the Massachusetts personnel file statute, G.L. c. 149, § 52C. (Id.) On November 21, 2024, Expeditors filed its answer, denying Plaintiff's allegations of wrongful conduct. (Dkt. 14.) Now, Plaintiff seeks to amend his complaint to assert new causes of action and to bring individual claims against Peveri and Brian Carrabes. Specifically, Plaintiff seeks to add civil claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act against Expeditors; a promissory estoppel claim against Expeditors; and claims of intentional interference with contractual relations and intentional interference with advantageous business relations against Peveri and Brian Carrabes. Plaintiff's proposed amended complaint contains lengthy digressions on unrelated matters involving former Expeditors employees or customers in other jurisdictions, in which Plaintiff has no involvement. (Am. Compl. ¶¶ 56-61, 211-280.) It also includes detailed accounts of Expeditors' corporate structure, compensation and benefits policies. (Id. ¶¶ 62-97, 115-118.) Plaintiff also devotes extensive time attempting to buttress his purported RICO claims. (Id. ¶¶ 119-143, 205-210, 281-291, 337-351). Expeditors denies Plaintiff's characterization of the events leading up to the end of his employment. (Dkt. 14, Answer ¶¶ 127-161.) Expeditors opposes Plaintiff's proposed amendment because, even

accepting all of the allegations in Plaintiff's sprawling, proposed amended complaint, Plaintiff's proposed amendments are futile. Moreover, new factual allegations in Plaintiff's proposed amended complaint demonstrate that his other claims, including his Title VII sex discrimination claim, fail as a matter of law. As such, Expeditors opposes Plaintiff's complaint.[2]

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, factual allegations must be enough to raise a right to relief above the "speculative level." Id. at 555 (citations omitted). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Dismissal is appropriate if plaintiff's well-pleaded facts do not possess enough heft to show that plaintiff is entitled to relief. Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008).

## ARGUMENT

**I.     PLAINTIFF'S PROPOSED CIVIL RICO CLAIMS ARE FUTILE**

**A.     Plaintiff Does Not Allege a Predicate Act Under RICO**

To state a civil claim for a RICO violation, Plaintiff must sufficiently allege that Expeditors engaged in a predicate act of "racketeering activity," which is defined as an act or threat of "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, [] dealing in a controlled substance or listed chemical ..." or an act that otherwise

---

[2] In this opposition, Expeditors addresses Plaintiff specific factual allegations in more detail below, in the context of Plaintiff's proposed causes of action.

4903-0331-5740.1 / 086897.1185

violates one of RICO's specifically enumerated criminal statutes.  See Willis v. Lipton, 947 F.2d 998, 1001 (1st Cir. 1991).  Here, the gravamen of Plaintiff's complaint is that Expeditors terminated him based on his gender, in violation of Title VII.  (Am. Compl. ¶¶ 296-300.) However, Title VII is not one of the laws that constitutes "racketeering activity" under RICO and cannot serve as the basis of a civil RICO claim.  See Beck v. Prupis, 529 U.S. 494, 505–06 (2000).  Plaintiff therefore attempts to recast his routine discrimination claim as a civil RICO claim by alleging that Expeditors committed mail and/or wire fraud by making general comments about its "no layoff" policy on its website and by making false comments about Plaintiff's job performance.  (Am. Compl. ¶¶ 337-51.)  However, to sufficiently allege mail and wire fraud, Plaintiff must show that Expeditors "engaged in a scheme to defraud with the specific intent to defraud and that they used the United States mails and/or the interstate wires in furtherance of the scheme."  U.S. v. Sawyer, 85 F.3d 713, 723 (1st Cir. 1996); McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786 (1st Cir.1990).  Mail or wire fraud is not committed simply by sending false statements through the mail.  See Hall v. Witteman, 569 F. Supp. 2d 1208, 1226 (D. Kan. 2008).  Instead, the mails must have been used to further a scheme to defraud or obtain money or property through false pretenses.  Id.  Plaintiff does not and cannot credibly allege how Expeditors' purported false statements were intended to obtain any money or property from Plaintiff. Rather, Plaintiff's proposed amendment is nothing but a thinly veiled, futile effort to distort a routine employment dispute into a civil RICO claim.  See Beck, 529 U.S. at 505–06.

### B.    Plaintiff Does Not Allege Causation Under RICO

To establish causation, Plaintiff must not only allege that he suffered an economic injury but also, specifically, that Expeditors' alleged racketeering conduct caused his injury.  See 18

4

U.S.C. § 1964(1); Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992).  To establish causation, Plaintiff must allege sufficient facts showing that the alleged racketeering activity was not only a "but for" cause of his injury but the "proximate cause" as well.  Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., 990 F.3d 31, 35 (1st Cir. 2021).  The "central question" in evaluating proximate causation in the RICO context "is whether the alleged violation led directly to the plaintiff's injuries."  Id.  Here, Plaintiff does not, and cannot, sufficiently allege that any purported predicate act by Expeditors caused his termination.  See Beck, 529 U.S. at 505–06; Camelio v. Am. Fed'n, 137 F.3d 666, 670 (1st Cir. 1998).

Plaintiff's claimed "harm" is his alleged wrongful termination from his employment with Expeditors.  However, the Supreme Court and the First Circuit have repeatedly held that an employee's alleged wrongful termination cannot serve as the basis of a civil RICO claim.  See Beck, 529 U.S. at 505–06; Willis, 947 F.2d at 1001; Miranda v. Ponce Fed. Bank, 948 F.2d 41, 46 (1st Cir. 1991) (abrogated on other grounds); Pujol v. Shearson/Am. Exp., Inc., 829 F.2d 1201, 1205 (1st Cir. 1987); Nodine v. Textron, Inc., 819 F.2d 347, 348–49 (1st Cir. 1987).  In Miranda, an employee alleged that her employer committed a civil RICO violation by terminating her employment as part of her employer's bribery scheme.  948 F.2d at 46. However, the First Circuit held that the plaintiff could not state a civil RICO claim because she was not fired as a means of specifically committing obstruction of justice.  Id.  In doing so, the First Circuit has noted that allowing a plaintiff to pursue a civil RICO claim premised upon an alleged wrongful termination poses "a serious risk that potential RICO liability be extended beyond any principled boundary in 'justice or policy.'"  Willis, 947 F.2d at 1001.

Here, similarly, Plaintiff was not terminated so that Expeditors could allegedly commit mail or wire fraud.  See id.  Rather, Plaintiff merely alleges that he was terminated, that

Expeditors' stated reasons for terminating his employment are untrue, and that Expeditors' real reasons for terminating him were different from, or inconsistent with, Expeditors' alleged public representations of its purported no layoffs policy and/or the reasons identified in his personnel file.  (Am. Compl. ¶¶ 340(a)-(e).).  Plaintiff's allegations are just as insufficient as those in the numerous other First Circuit cases in which courts have repeatedly refused to find the existence of proximate cause for a civil RICO claim arising out of an alleged wrongful termination, even when there was a more direct, alleged connection between the purported illegal activity and the plaintiff's termination.  See Miranda, 948 F.2d at 46; Pujol, 829 F.2d at 1205; Dermesropian v. Dental Experts, LLC, 718 F. Supp. 2d 143, 154 (D. Mass. 2010); Scivally v. Graney, C.A. No. 92-11688-Z, 1993 WL 207758, at *3 (D. Mass. June 7, 1993), aff'd, 21 F.3d 420 (1st Cir. 1994); U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., C.A. No. 01-10583-DPW, 2003 WL 21228801, at *13 (D. Mass. May 21, 2003), aff'd, 360 F.3d 220 (1st Cir. 2004); see also Camelio v. Am. Fed'n, 137 F.3d 666, 670 (1st Cir. 1998) (noting that "[t]his is the fourth time in recent years that we have been called upon to evaluate the sufficiency of a RICO claim arising from an employment dispute [and] [i]n all four cases, the claim has failed to survive a motion to dismiss.").  Plaintiff's proposed amendment is precisely the kind of improper, unfounded expansion of the civil RICO statute that these precedents foreclose, and Plaintiff's motion to amend should therefore be denied as futile.  See id.

### C. Plaintiff Fails to Allege Distinctiveness Under the RICO Act

Plaintiff's civil RICO claim also fails as a matter of law because Plaintiff does not allege an enterprise that is distinct from Expeditors, the named defendant. See Doyle v. Hasbro, Inc., 103 F.3d 186, 191 (1st Cir. 1996).  Every individual or entity that Plaintiff alleges participated in the purported covert termination scheme is a subsidiary of Expeditors or an individual employee

of Expeditors or one of its subsidiaries. However, it is axiomatic that "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise. Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir. 1995), as amended on denial of reh'g (July 12, 1995); Kelly v. Waters Corp., No. CV 17-12193-LTS, 2023 WL 2404040, at *5–6 (D. Mass. Feb. 9, 2023); see also McLarnon v. U.S., No. CIV.A.09-10049-RGS, 2009 WL 1395462, at *4–5 (D. Mass. May 19, 2009); Mear v. Sun Life Assur. Co. of Canada (U.S.)/Keyport Life Ins. Co., No. CIV.A.06-12143RWZ, 2008 WL 245217, at *9 (D. Mass. Jan. 24, 2008).  In Mear, Judge Zobel dismissed a civil RICO claim in which the only named defendant was a corporation and the alleged wrongful acts were committed by the corporation, its employees and its subsidiaries. Id.  In doing so, Judge Zobel noted that because "a corporation, can only act through its employees, officers, subsidiaries and agents, the former is not distinct from the latter for the purpose of distinguishing a RICO person from a RICO enterprise. Id.  Here, Plaintiff's civil RICO claim similarly fails as a matter of law because it does not allege separate and distinct entities. Id.; see also Rodriguez v. Banco Cent., 777 F. Supp. 1043, 1054 (D.P.R. 1991) ("The distinction requirement is not satisfied by merely naming a corporation and its employees, affiliates, and agents as an association-in-fact, since a corporation acts through its employees, subsidiaries and agents, and would thereby be merely associating with itself."); Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 449 (1st Cir. 2000) (employees and subsidiaries carrying on regular affairs of corporate enterprise are not distinct from enterprise); Odishelidze v. Aetna Life & Cas. Co., 853 F.2d 21, 23–24 (1st Cir. 1988) (upholding dismissal of RICO complaint where enterprise comprised of defendant company and its subsidiaries and employees).

Plaintiff's allegations regarding other lawsuits in which Expeditors and its subsidiaries addressed issues of whether its subsidiaries were subject to personal jurisdiction or whether a plaintiff alleged sufficient facts to pierce the corporate veil or treat a subsidiary as an alter ego of Expeditors are irrelevant and unavailing.  See Bessette, 230 F.3d at 449.  The analysis under the civil RICO standard for distinctiveness is different from the issue of whether a corporation and its subsidiaries are separate legal entities.  Id.  In Bessette, the First Circuit specifically and unequivocally rejected the plaintiff's argument that the relationship between a parent corporation and its subsidiaries satisfied RICO's distinctiveness requirement just because they were separate legal entities.  Id.  In doing so, the First Circuit held that the analysis of distinctiveness for a civil RICO claim requires examination of "the allegations in the complaint to determine whether the parent's activities are sufficiently distinct from those of the subsidiary at the time that the alleged RICO violations occurred."  Id.; see also Kelly, 2023 WL 2404040, at *5–6 (no distinctiveness where alleged enterprise consisted of two related companies and their individual employees). Here, Plaintiff merely alleges that Expeditors, the corporate defendant, and various subsidiaries, employees and agents of the company acted together and in concert to conduct Expeditors' corporate affairs, specifically, the alleged "covert termination" scheme.  (Am. Compl. ¶¶ 337-51.)  These allegations are insufficient to meet the distinctiveness requirement for a civil RICO claim, and Plaintiff's proposed amendment is therefore futile.  See Bessette, 230 F.3d at 449.

### D.    Plaintiff's RICO Conspiracy Claim Fails as a Matter of Law

When, as in this matter, a plaintiff fails to allege a violation of § 1962(c), then any purported § 1962(d) conspiracy claim also fails as a matter of law.  See Miranda, 948 F.2d at 45 n. 4; Rhodes v. Consumers' Buyline, Inc., 868 F. Supp. 368, 377 (D. Mass. 1993).  Here, Plaintiff's proposed amended complaint fails to state a claim under § 1962(c) for the reasons set

8

forth above. As such, Plaintiff's purported § 1962(d) claim is similarly futile, and Plaintiff's motion to amend must be denied as to his proposed § 1962(d) claim. See Miranda, 948 F.2d at 45 n. 4; Rhodes, 868 F. Supp. at 377.

## II.    PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM IS FUTILE

To state a promissory estoppel claim, Plaintiff must sufficiently allege that (1) Expeditors made a representation of fact (or acts amounting to the same) to Plaintiff intending to induce a course of conduct by Plaintiff; (2) Plaintiff made an act or omission resulting from reasonable reliance on such representation; and (3) Plaintiff suffered detriment as a result of the act or omission.  See Rodden v. Savin Hill Enters., LLC, No. 15-03194-C, 2016 WL 1688688, at *2 (Mass. Super. Apr. 21, 2016) (allowing Rule 12(b)(6) motion to dismiss where alleged promises were "vague or indefinite").  As the Supreme Judicial Court has made clear, Plaintiff must sufficiently allege that he *reasonably* relied on "an unambiguous promise."  See Upton v. JW Businessland, 425 Mass. 756, 760 (1997).  Plaintiff's proposed promissory estoppel claim against Expeditors is futile because Plaintiff does not allege that Expeditors made an unambiguous promise, that Plaintiff reasonably relied on any alleged promise or that Plaintiff suffered any detriment.  See Coleman v. Cambridge Sav. Bank, No. 22-P-695, 2023 WL 5286090, at *6 (Mass. App. Ct. Aug. 17, 2023); O'Brien v. Anolog Devices, Inc., 34 Mass. App. Ct. 905, 905–06 (1993); see also Bell v. Rinchem Co., Inc., C.A. No. 4:14-40177-TSH, 2014 WL 11290899, at *14 (D. Mass. Dec. 2, 2014) (granting Rule 12(b)(6) motion where plaintiff could not reasonably believe employment handbook constituted binding promise); Williams v. MassMutual Life Ins. Co., No. CV 05-30257-MAP, 2006 WL 8458606, at *2–3 (D. Mass. May 16, 2006), report and recommendation adopted, No. CV 05-30257-MAP, 2006 WL 8458605 (D.

4903-0331-5740.1 / 086897.1185

Mass. June 9, 2006) (granting Rule 12(b)(6) motion where handbook made clear that employment relationship was at will).

Here, Plaintiff alleges that Expeditors promised that (1) it would not engage in layoffs; and (2) it would provide "fair and equal treatment" under its disciplinary policy. (Am. Compl. ¶ 328(a)-(b).)  Plaintiff also alleges that Expeditors' Code of Business Conduct "emphasizes honesty, integrity, and fairness in its dealings with employees.  (Id. ¶ 328(c).)  However, Massachusetts courts have held that that these kinds of general statements are not sufficient, as a matter of law, to satisfy the requirement of alleging a clear and unambiguous promise.  See Coleman, 2023 WL 5286090, at *6 (company's standard progressive discipline policy was not an unambiguous promise to adhere to policy); O'Brien, 34 Mass. App. Ct. at 905–06 (general reference to company's policy of rewarding "above-average" work and encouraging career development did not create binding promise); see also Costello v. Whole Foods Mkt. Grp., Inc., No. 16-10673-GAO, 2016 WL 4186927, at *6–7 (D. Mass. Aug. 8, 2016) (granting motion to dismiss because general description of employment policies does not create a binding contract); Chilson v. Polo Ralph Lauren Retail Corp., 11 F. Supp. 2d 153, 157 (D. Mass. 1998).

Plaintiff's proposed amended complaint also fails to sufficiently allege reasonable reliance.  See Coleman, 2023 WL 5286090, at *6.  Here, the very first page of Expeditors' employee handbook states unequivocally that:

- "The handbook is a summary of many of the policies and benefits currently in effect in the United States. It does not purport to cover all situations and circumstances.";

- "The Company has the right to amend, change or terminate any policy or benefit plan without the consent of any employee or group of employees.";

- "The following policies and guidelines do not create any contract or employment rights."'

10

- "Expeditors and its employees are free to terminate the employment relationship at any time without cause or notice."; and

- "This at will employment relationship cannot be altered, except by written agreement executed by the employee and a Company Officer."

(Affidavit of Maria Kalina "Kalina Aff." ¶ 4, Ex. A, p. 1.)[3]   The handbook repeats these disclaimers in other places:

- "The Company has the right to amend, change or terminate any benefit and/or benefit plan without the consent of any employee or group of employees."

(Id. at p. 14.)   Similarly, Expeditors specifically reserves the right to terminate the at-will employment relationship at Expeditors' sole discretion:

- "The Company may, at its discretion, reprimand employees orally or in writing, suspend them without pay or terminate them without notice. Employment at Expeditors is on an at-will basis and the Company reserves the right to terminate employment with or without cause."

(Id. at p. 34.)

Additionally, the Code of Business Conduct upon which Plaintiff relies is part of the handbook, beginning on Page 6, and is subject to the disclaimers and nature of at-will employment set forth above.  (Id. at p. 6.)  As such, Expeditors' handbook and Code of Business Conduct fall squarely within the numerous cases in which Massachusetts state and federal courts have dismissed claims that a plaintiff could reasonably rely upon an employer's general policies and practices contained in its handbook.   See Day v. Staples, Inc., 555 F.3d 421, 59 (1st Cir. 2009); Barry v. Chase Precast Corp., No. 021464B, 2004 WL 233323, at *3–4 (Mass. Super. Jan. 24, 2004) (no cause of action where handbook stated in several places and in normal typeface and font that employment was at will and terminable at any time and for any reason). In Day, the

---

[3] This Court may consider Expeditors' handbook documents at the Rule 12(b)(6) stage because in reviewing a Rule 12(b)(6) motion, a court may consider documents central to plaintiff's claim and documents sufficiently referred to in the complaint.  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007); Bell, 2014 WL 11290899, at *13 n.19.

First Circuit held that the employee could not reasonably believe the employment manuals constituted terms or conditions of employment when the documents expressly stated that employment was at-will and the employee did not have a guarantee or right of continued employment. 555 F.3d 421. Here, Expeditors' policies contain identical, explicit disclaimers, and Plaintiff's proposed amendment is therefore futile. See Bell, 2014 WL 11290899, at *14; Costello, 2016 WL 4186927, at *6–7; 2006 WL 8458606, at *2–3.

Lastly, Plaintiff does not sufficiently allege that he relied on these alleged representations to his detriment because Plaintiff does not allege he would have done anything differently in the absence of these alleged representations. See Bisbano v. Strine Printing Co., 737 F.3d 104, 112 (1st Cir. 2013). Plaintiff was an employee of Expeditors at the time of these alleged representations, and the allegations in Plaintiff's proposed amended complaint establish nothing more than that he continued working for Expeditors. (Am. Compl. ¶¶ 21, 327-332.) These allegations are not sufficient as a matter of law to state a claim for promissory estoppel. See Bisbano, 737 F.3d at 112 (no detrimental reliance where allegations established only that the actions plaintiff took "were entirely consistent with doing the job for which the plaintiff was hired and remunerated"); Cagnina v. Philadelphia Ins. Cos., 61 F. Supp. 3d 192, 194 (D. Mass. 2014) (no detrimental reliance where plaintiff alleged she continued working hard based on employer's statement that she was assured "long-term" job security). Put simply, Plaintiff does not and cannot claim that he did anything differently in the course of his employment with Expeditors based upon the alleged general representation that Expeditors had a "no layoffs" policy, that Plaintiff would receive "fair and equal treatment" under its disciplinary policy, or that Expeditors' Code of Conduct "emphasizes honestly, integrity, and fairness in its dealings with employees." See Hinchey v. Nynex Corp., 144 F.3d 134, 146 (1998) (rejecting

4903-0331-5740.1 / 086897.1185

misrepresentation claims under Massachusetts law involving statement that at-will plaintiff was a "valued employee in good standing," because there was no evidence that plaintiff would have acted differently had the statement not been made); Shen v. Biogen Idec Inc., 523 F. Supp. 2d 48, 57 (D. Mass. 2007) ("whatever may have been said to [the plaintiff]" regarding job security could not form a basis for negligent misrepresentation given at-will employment contract).

## III.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE INSUFFICIENT

### A.    Plaintiff Fails to Allege Breach of Written Contract

Plaintiff's claim for breach of a written contract is futile because Plaintiff does not sufficiently allege the existence of a contract between Plaintiff and Expeditors.  See Costello, 2016 WL 4186927, at *6–7.  To determine whether an employer's written personnel policies or manual constitute a binding contract, courts consider several factors, including whether the employer retained the right to unilaterally modify terms; the terms of the manual were not negotiated; the manual stated that that it provided only guidance regarding the employers' policy; no term of employment was specified in the manual; and the employee did not sign the manual to manifest assent.  See id.  If the allegations in a complaint demonstrate that most of these factors weigh against finding the existence of binding contract, then dismissal is appropriate at the Rule 12(b)(6) stage.  See id. (dismissing breach of contract and breach of implied covenant of good faith and fair dealing pursuant to Rule 12(b)(6)); Bell, 2014 WL 11290899, at *14 (Rule 12(b)(6) dismissal of breach of contract claim); Williams, 2006 WL 8458606, at *2–3 (Rule 12(b)(6) dismissal of implied contract claim); Chilson, 11 F. Supp. 2d at 157 (Rule 12(b)(6) dismissal of breach of contract claim).  Here, Expeditors' policies repeatedly and explicitly state that (1) Expeditors reserved the right unilaterally to modify its terms as to, among other issues, employee discipline and (2) the employment relationship was an at will

relationship that Expeditors (or Plaintiff) could end at any time for any reason. Plaintiff does not allege that he negotiated any aspect of the handbook at any time. The handbook also explicitly states that it only provides guidance regarding Expeditors' policies. The handbook does not specify a term of employment. Thus, all of these factors establish that, as a matter of law, Expeditors' handbook does not constitute a binding contract between Expeditors and Plaintiff. See Costello, 2016 WL 4186927, at *6–7; Bell, 2014 WL 11290899, at *14; Williams, 2006 WL 8458606, at *2–3; Chilson, 11 F. Supp. 2d at 157.

Plaintiff's allegation that he annually reviewed the Code of Business Conduct and verified this review in writing is not sufficient to allege the existence of a contract (Am. Compl. ¶¶ 22-25), nor is his allegation that these policies applied to all employees (id. ¶ 35-36), which is true of any employee handbook. See Bell, 2014 WL 11290899, at *14; Chilson, 11 F. Supp. 2d at 157. In Bell, the district court dismissed the plaintiff's breach of contract claim where four of the factors militated against a finding that the employer's handbook constituted a binding contract, even though the plaintiff had been required to sign the handbook. See 2014 WL 11290899, at *14. The court noted that the explicit disclaimers in the handbook were the most significant factors and that "[u]nder these circumstances, it would strain credulity to construe the handbook as a binding employment contract." Id. Here, for the same reasons, Plaintiff's amended complaint fails to state a claim for breach of contract. See id.

**B.    Plaintiff Fails to Allege Breach of an Oral Contract**

Plaintiff's breach of an oral contract claim fails because, again, Plaintiff fails to allege the existence of a contract or any alleged breach by Expeditors. See Day, 555 F.3d at 59. The sole basis for Plaintiff's claim is that he was allegedly laid off as part of a purported covert termination program and that this act was contrary to Expeditors' public statements that it has a

14

"no layoffs policy." (Am. Compl. ¶¶ 313-319.) Plaintiff seems to conflate the alleged existence of a general statement on Expeditors' website regarding a "no-layoff policy" with a specific promise to Plaintiff that his employment would continue uninterrupted or that he would only be terminated for specific reasons, an allegation that is undercut not only by the explicit terms of Expeditors' handbook but also by Plaintiff's own allegations, since Plaintiff admits that he was hired "as an at-will employee." (Id. ¶ 314.) Moreover, as set forth above, Expeditors explicitly reserved the right to terminate employees—including Plaintiff—without notice and with or without cause. Thus, even accepting as true Plaintiff's allegation that Expeditors had a "no layoff policy," Expeditors also specifically reserved the right to "amend, change or terminate any policy" at its discretion. As such, Plaintiff has not alleged, and cannot allege, the existence of an oral contract. See Day, 555 F.3d at 59.

## IV.    PLAINTIFF'S INTENTIONAL INTERFERENCE CLAIMS ARE FUTILE

Although claims for intentional interference with contractual relations and intentional interference with advantageous relations have different *prima facie* elements, Massachusetts law requires that, in the context of an allegedly wrongful termination, a plaintiff must sufficiently allege actual malice to state a claim against an individual employee of the defendant under either theory. See Nicholls v. Bos. Transp. Dep't, No. 13-P-293, 2014 WL 738202, at *3 (Mass. App. Ct. Feb. 27, 2014); Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 783 (2001). Here, Plaintiff fails to sufficiently allege actual malice on behalf of Peveri or Brian Carrabes, and both interference claims are therefore futile. See id. Moreover, Plaintiff's contractual interference claims against both defendants fail as a matter of law because, for the reasons set forth above, Plaintiff does not sufficiently allege the existence of an employment contract between him and Expeditors. See id.

A.       **Plaintiff Does Not Allege that Tracy Peveri Acted with Actual Malice**

As to Tracy Peveri, Plaintiff alleges that in 2022 and 2023, she told Plaintiff that she had received complaints about his performance, noted these issues in Plaintiff's 2022 performance review, demoted Plaintiff from his position as district sales manager, replaced him with a less qualified individual, reassigned him to a warehouse, and reduced his share of the bonus pool. (Am. Compl. ¶¶ 144-180.)  These allegations do not, as a matter of law, rise to the level of severity or specificity required to establish actual malice on the part of Peveri.  See Nicholls, 2014 WL 738202, at *3 (affirming trial court's Rule 12(b)(6) dismissal of intentional interference because plaintiff's allegations that supervisor opposed plaintiff's return to work did not rise to level of actual malice).  To establish actual malice, Plaintiff must allege sufficient facts to show that an individual supervisor's actions were driven by spite or malevolence, *i.e.*, a purpose unrelated to any legitimate corporate interest. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664 (1981).  Personal gain, including financial gain, and personal dislike are generally insufficient to warrant an inference of the requisite ill will, and the SJC has noted that even an allegation of intentional, status-based discrimination may not be sufficient to establish actual malice. See Weber, 434 Mass. at 781; King v. Driscoll, 418 Mass. 576, 587 (1994).

Courts have regularly held that routine employment decisions, even if unfounded or motivated by favoritism are not sufficient to allege actual malice because the actual malice standard exists to allow corporate offices "freedom of action" without "fear of personal liability" for routine corporate management.  See Weber, 434 Mass. at 783 ("[A] manager's decision to replace an at-will employee with a less qualified employee, even one 'he arbitrarily chose,' … does not support an inference of malice); Alba v. Sampson, 44 Mass. App. Ct. 311, 314-15 (1998).  In Alba, the plaintiff alleged that her supervisor replaced her with someone less

qualified because the supervisor did not like the plaintiff and did not want to work with the plaintiff.  Id.  The Appeals Court affirmed the dismissal of this claim because these allegations, even if believed, did not show actual malice.  Id.  In fact, the precedent Plaintiff cites in his proposed amended complaint underscores the futility of his proposed intentional interference claims.  See O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 688-89 (1996).  In O'Brien, the plaintiff alleged that her supervisor regularly screamed and yelled at her in front of others, calling her "looney tunes," "whore," "prostitute," and "slut."  Id.  Here, Plaintiff alleges nothing of the sort, and his proposed intentional interference claims are therefore futile.  See Weber, 434 Mass. at, 783; Alba, 44 Mass. App. Ct. at 314-15.

### B.    Plaintiff Does Not Allege that Brian Carrabes Acted with Actual Malice

Plaintiff similarly fails to allege sufficient facts to establish that Brian Carrabes acted with actual malice toward Plaintiff. Plaintiff's only specific allegation against Brian Carrabes is that, during the February 5, 2024 meeting, Brian Carrabes "became extremely angry and said you no longer have a job at Expeditors and yelled get the fuck out of my office."  (Am. Compl. ¶¶ 182-191.)  This allegation is not sufficient to establish actual malice and falls well short of the kind of continued, persistent conduct Massachusetts courts require for a plaintiff to hold an individual supervisor personally liable for the plaintiff's allegedly wrongful termination.  See Weber, 434 Mass. at, 783; Alba, 44 Mass. App. Ct. at 314-15.

## V.    PLAINTIFF FAILS TO STATE A WRONGFUL TERMINATION CLAIM

Plaintiff's proposed amended complaint fails to state a claim for wrongful termination. See Meehan v. Med. Info. Tech., Inc., 488 Mass. 730, 736-37 (2021).  To the extent Plaintiff's wrongful termination claim rests upon an alleged violation of Section 52C, Plaintiff does not and cannot allege that at any time prior to his termination, Plaintiff sought exercise any of his

"statutory rights" pursuant to Section 52C. Plaintiff does not claim that Expeditors denied a request by him to inspect his personnel file or to respond to any documents in his file. (Am. Compl. ¶¶ 320-26.) Instead, Plaintiff merely claims that he disputes the contents of his personnel file, though he does not even allege if he first reviewed his file before or after his termination. See Wood v. City of Haverhill, No. 1:23-cv-12377-JEK, 2024 WL 4189932, at *10 (D. Mass. Sept. 13, 2024) (dismissing wrongful termination claim where termination occurred before plaintiff allegedly exercised public policy right to retain counsel). As such, Plaintiff's allegations stand on far different, and far weaker, footing than when an employee claims they were wrongfully terminated after they sought to exercise a right under § 52C. Cf. Meehan., 488 Mass. at 736-37. Therefore, Plaintiff's proposed wrongful termination claim fails as a matter of law. See id.

## VI.    PLAINTIFF DOES NOT PLAUSIBLY ALLEGE SEX DISCRIMINATION

Although Rule 12(b)(6) does not require a party to plead specific facts establishing a *prima facie* case of discrimination under Title VII, Plaintiff must allege sufficient facts to establish that his claim is facially plausible, *i.e.*, that he was subjected to adverse action *because of* his status in a protected class. See O'Connor v. Northshore Int'l Ins. Servs., No. 01-1547, 2003 WL 21068432, at *1 (1st Cir. April 11, 2003). Here, Plaintiff alleges, at length, that he was terminated as part of a "covert termination scheme" that allegedly impacted more than 2,000 individuals. And while Plaintiff claims that his employment was terminated because he is male, he also alleges that female employees were laid off or constructively discharged as a result of this scheme. (Am. Compl. ¶¶ 195-97.) In fact, Christina Boudreau, the female employee identified by name in Plaintiff's complaint, has filed a separate complaint, alleging that she was

*also* wrongfully terminated as part of an alleged covert termination program.[4] Plaintiff's allegation that Expeditors' alleged covert termination scheme caused his termination because of his sex cannot be facially plausible when Plaintiff simultaneously alleges that members of a different sex were terminated as part of the same "scheme." See Frith v. Whole Foods Mkt., Inc., 38 F. 4th 263, 271 (1st Cir. 2022); Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 225 (1st Cir. 2012) (complaint failed to plausibly allege statements were because of her gender when comments applied equally to individuals of different genders); Robert v. Raytheon Tech. Corp., 731 F. Supp. 3d 198, 205 (D. Mass. 2024); Carney v. Town of Weare, No. 15-cv-291-LM, 2017 WL 680384, at *9 (D.N.H. Feb. 21, 2017) (dismissing harassment claim where allegations showed that conduct affected both sexes equally and therefore conduct was not on the basis of sex). Here Plaintiff fails to allege specific facts by which this Court could plausibly infer that he was terminated *because of* his sex, and his voluminous allegations cannot mask this fatal flaw. See id. As such, Plaintiff's Title VII claim must be dismissed. See id. Additionally, to the extent Plaintiff alleges that his December 2022 demotion was an act of discrimination, this allegation is time-barred. Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); Williams v. City of Brockton, 59 F. Supp. 3d 228, 242–43 (D. Mass. 2014). Plaintiff did not file a charge with the Equal Employment Opportunity Commission until August 12, 2024, more than 300 days after his alleged demotion. (Am. Compl. ¶ 292.) As such, any claim of discrimination arising out of Plaintiff's demotion is barred by the statute of limitations. See Bonilla, 194 F.3d at 278; Williams, 59 F. Supp. 3d at 242–43.

---

[4] Christina Boudreau v. Expeditors International of Washington, Inc., C.A. No. 1:25-cv-10300, Dkt. 1, Compl. ¶¶ 35-39, 60-61).

## VII.    PLAINTIFF'S PROPOSED AMENDMENT VIOLATES RULE 8

This Court should also deny Plaintiff's motion for leave to file the amended complaint in its current form because Plaintiff's 112-page, 369-allegation amended complaint violates F.R.C.P. 8's requirement that Plaintiff plead a "short and plain" statement for his claim of relief. See White McLaughlin v. Cambridge Sch. Comm., No. CV 24-10413-WGY, 2024 WL 4437147, at *6 (D. Mass. Oct. 7, 2024); Pironti v. Sprague, No. CV 20-40111-TSH, 2021 WL 11530331, at *2 (D. Mass. May 3, 2021).  Plaintiff's proposed amended complaint contains lengthy, unnecessarily detailed allegations about Expeditors' compensation policies or summaries of other lawsuits filed in other jurisdictions by other former employees who have no connection to Plaintiff's work in Expeditors' Massachusetts office.  Plainly, the proposed amended complaint is precisely the kind of meandering, convoluted tome that Rule 8 seeks to prevent.  See id.  As such, Plaintiff's motion to amend should be denied.  See id.

By Its Attorneys,

/s/ Matthew J. Lynch
Asha A. Santos, Bar No. 670861
asantos@littler.com
Matthew J. Lynch, Bar No. 689363
mlynch@littler.com

LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone:    617.378.6000
Facsimile:    617.737.0052

Dated: February 25, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew J. Lynch, hereby certify that on this 25th day of February 2025, the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to all registered participants identified on the Notice of Electronic Filing and via first-class mail to all non-registered participants identified on the Notice of Electronic Filing.

*/s/ Matthew J. Lynch*
Matthew J. Lynch

4903-0331-5740.1 / 086897.1185