UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Michael Carrabes,<br><br>        Plaintiff,<br><br>   v.<br><br>Expeditors International of<br>Washington, Inc.,<br><br>        Defendant. | No. 1:24-CV-12142 |

**FOURTH AFFIDAVIT OF ADAM CLERMONT**

I, Adam Clermont depose and say:

1.  I am an attorney licensed to practice law in the
    Commonwealth of Massachusetts and am counsel for
    Plaintiff Michael Carrabes ("Plaintiff") in the above-
    captioned matter. I make this affidavit based on my
    personal knowledge and in support of Plaintiff's motion
    to modify the scheduling order.

2.  On March 5, 2025, the Court issued a Scheduling Order
    (Doc No. 52) setting May 12, 2025, as the deadline for
    written discovery and September 2, 2025, as the
    deadline for fact discovery. The Court also established
    deadlines of October 6, 2025, for Plaintiff's expert

witness disclosures and November 6, 2025, for
Defendant's expert witness disclosures.

3.    On March 5, 2025, Plaintiff served its First Set of
Interrogatories and First Set of Requests for
Production of Documents on Defendant Expeditors
International of Washington, Inc. ("Defendant"). On
April 2, 2025, Defendant requested an extension to
respond to the Plaintiff's discovery requests, which
was granted. On April 11, 2025, Defendant responded
with numerous objections and limited substantive
information for many of Plaintiff's requests. A copy of
the Defendants response to the Plaintiff First Set of
Interrogatories and First Set of Requests for
Production of Documents are attached as Exhibits 1 and
2.

4.    Defendant's discovery responses are characterized by
pervasive and systemic deficiencies, which have made it
impossible for Plaintiff to obtain meaningful discovery
within the current timeframe. A cursory examination of
Defendant's discovery responses reveals how barebones,
unresponsive, and improper their objections are.

5.    Defendant has produced virtually no meaningful
documents or information related to the central
allegations in Plaintiff's complaint, which center on

allegations of a covert workforce reduction program
evidenced by CEO Jeffrey Musser's January 24, 2023
email and his statements in a May 2, 2023 earnings
release. A photograph of Mr Musser's January 24, 2023
email is attached as Exhibit 3 and a copy of the May 2,
2023 earnings statement is attached hereto as Exhibit
4.

6. Defendant has engaged in a calculated pattern of denial
and obfuscation. In his January 24, 2023 email, Musser
explicitly directed managers to reduce workforce,
stating the company was "overstaffed by 2,000
employees" (approximately a 10% reduction) and warned
it "could be as high as 20%," emphasizing that
attrition would not be sufficient to address the issue.
This directive was later publicly confirmed in the May
2, 2023 earnings release where Musser stated, "We are
adapting and working diligently to bring expenses in
line with lower revenue by lowering headcount and
payroll expenses without resorting to layoffs."

7. The 2022 and 2023 Annual Reports conclusively confirm
this reduction occurred. The 2022 Annual Report states:
"At December 31, 2022, Expeditors employed
approximately 20,000 people, of which approximately
13,000 were employed in international locations." By
comparison, the 2023 Annual Report states: "At December

31, 2023, Expeditors employed approximately 18,000 people, of which approximately 12,000 were employed in international locations." Attached as Exhibit 5 are copies of the relevant excerpts from the 2022 and 2023 Annual Reports.

8.  The detailed employee count tables in both reports further confirm this reduction, showing a decrease from 19,900 total employees in 2022 to 18,100 in 2023— precisely the 2,000-employee (10%) reduction Musser directed in his January 24, 2023 email. Yet astonishingly, Defendant has failed to produce even the January 24, 2023 email itself in discovery and brazenly stated in its answer to Interrogatory No. 16 that Expeditors "did not implement[] work force reductions between January 1, 2022 and the present."

9.  Defendant's responses to Plaintiff's discovery requests are plagued by improper boilerplate and general objections, cut-and-paste objections unrelated to specific requests, vagueness objections to common terms, unsupported privilege claims without required logs, and contradictory positions across responses. Some of these issues are detailed in the accompanying memorandum.

10. On those rare occasions when Defendant responded to an
    interrogatory, the responses were vague and incomplete,
    offering conclusory statements without the substantive
    information requested. For example, in response to
    Interrogatory No. 6 regarding the reasons for
    Plaintiff's termination, Defendant provided only
    general assertions about performance issues without the
    specific details requested.

11. Defendant has also refused to provide information about
    other terminated employees despite their relevance to
    Plaintiff's claims (Interrogatories 2, 11, 14, 23;
    Document Requests 13, 19, 20, 21, 37) and declined to
    produce information or documents related to its
    workforce reduction (Interrogatories 3, 4, 5, 19, 22;
    Document Requests 12, 18, 22, 24, 25, 26, 28, 29, 40,
    43) and employee equity compensation (Interrogatories
    13, 14; Document Requests 47, 48, 49, 50, 51).

12. Defendant's responses to document requests are equally
    deficient. Defendant has made a partial production of
    the Plaintiff's personnel file and a training course on
    performance improvement plans but failed to identify
    which documents respond to which specific requests,
    making it impossible to determine if the production is
    complete or responsive to any particular request. Most
    concerning is the pattern of wholesale refusal to

provide discovery on the central issue in this case:
Mr. Musser's January 24, 2023 email directing a
workforce reduction of approximately 2,000 employees
(Request Nos. 12, 18, 24, 25).

13. Defendant has also raised improper objections based on
unsubstantiated burden claims and displayed internal
inconsistency by denying the existence of a workforce
reduction program in its interrogatory responses while
simultaneously refusing to produce documents related to
the same program in document responses.

14. On April 11, 2025, Defendant responded to Plaintiff's
Rule 30(b)(6) notice with a detailed letter raising
various objections to the proposed topics. While
Defendant indicated a willingness to provide a witness
for some limited topics, several key areas relevant to
Plaintiff's claims remain in dispute, including
information about the workforce reduction program, the
use of Performance Improvement Plans, and the treatment
of unvested equity awards for terminated employees.
Attached as Exhibit 6 is a copy of the April 11, 2025,
letter.

15. Plaintiff has also encountered challenges in scheduling
the deposition of Tracy Peveri, Plaintiff's former
supervisor and a key witness. I, as Plaintiff's counsel

based in Hong Kong, am traveling to the United States from April 19 to May 8. I asked Attorney Lynch if he would accept service of deposition subpoenas on behalf of Expeditors, and he indicated that subpoenas were not needed as Expeditors would voluntarily produce its employees for depositions.

16. Although I was scheduled to be in the United States, I was not scheduled to be in Boston. However, after agreeing to a date and making arrangements to travel to Boston to take Ms. Peveri's deposition, Defendant cancelled it and subsequently refused to provide an available date during the time I was scheduled to be in the United States, instead opting to pick the day they knew I was leaving.

17. Adding to these challenges are Defendant's apparently inconsistent positions regarding relevant evidence. For example, Defendant served Requests for Admission concerning anonymous emails sent from a Proton account, yet raised relevance objections to Plaintiff's discovery requests regarding the same emails (Document Requests 45). Defendant previously addressed these emails in its Motion to Set a Status Conference, claiming that the individual who sent the email appears to have relevant and discoverable information in this

litigation. (Doc No. 34). A copy of Defendant's
Requests for Admission is attached as Exhibit 7.

18. Plaintiff has diligently pursued discovery since the
issuance of the Scheduling Order, promptly serving
comprehensive written discovery requests and seeking
depositions of key witnesses, including a Rule 30(b)(6)
deposition of the corporate defendant. Any delay in
completing discovery is certainly not attributable to
Plaintiff's lack of diligence.

19. Given the significant issues with Defendant's discovery
responses, Plaintiff requests a sixty-day extension of
all discovery deadlines. This extension is necessary to
conduct Rule 37.1 conferences, resolve disputes
regarding the Rule 30(b)(6) deposition scope, complete
key witness depositions, including that of Tracy
Peveri, and allow for follow-up discovery as needed.
However, Plaintiff anticipates that this extension may
be insufficient should Defendant's unreasonable
litigation conduct persist, necessitating further
modifications. The requested extension is reasonable
and will not significantly impact the overall case
schedule, as there are still several months before
expert discovery is scheduled to begin on October 6,
2025.

Signed under the pains and penalties of perjury this 24th day of April 2025.

_/s/ Adam Clermont_
Adam Clermont
