UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Michael Carrabes,<br><br>       Plaintiff,<br><br>  v.<br><br>Expeditors International of Washington, Inc.,<br><br>       Defendant. | No. 1:24-CV-12142 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER

### INTRODUCTION

Plaintiff Michael Carrabes ("Plaintiff") submits this memorandum in support of his motion to extend the discovery deadlines established in the Court's Scheduling Order. This extension is necessary due to significant issues with Defendant Expeditors International of Washington, Inc.'s ("Defendant") discovery responses, which, at a minimum, will require a Rule 37.1 conference and, either further responses from the Defendant or significant motion practice. Despite Plaintiff's good faith efforts to obtain meaningful discovery, there remain substantial deficiencies that cannot be resolved within the current timeframe. Indeed, even a cursory examination of the Defendant's discovery responses reveals how barebones, unresponsive, and improper their objections are, further justifying the need for an extension.

**FACTUAL BACKGROUND**

On March 5, 2025, this Court issued a Scheduling Order (Doc No. 52.) setting May 12, 2025, as the deadline for written discovery and September 2, 2025, as the deadline for fact discovery. The Court also established a deadline of April 7, 2025 for Motions to Amend, October 6, 2025 for Plaintiff's expert witness disclosures, and November 6, 2025 for Defendant's expert witness disclosures. Since that time, Plaintiff has diligently pursued discovery, but has encountered several significant issues:

**I.   ISSUES WITH WRITTEN DISCOVERY RESPONSES**

On March 5, 2025, Plaintiff served its First Set of Interrogatories and First Set of Requests for Production on the Defendant. (Fourth Affidavit of Adam Clermont ("Clermont Aff. IV") ¶ 3.) On April 2, 2025, the Defendant requested an extension to respond to the Plaintiff's discovery requests, which was granted. (Id.) On April 11, 2025, Defendant responded with numerous objections and limited substantive information for most of Plaintiff's requests. (Id.) The responses demonstrate pervasive and systemic discovery failures that will require substantial time to address.

Most critically, Defendant has produced virtually no meaningful documents or information related to the central

allegations in Plaintiff's complaint. (Id. ¶¶ 4-5.) Despite the case centering on allegations of a covert workforce reduction program evidenced by CEO Jeffrey Musser's January 24, 2023 email and his statements in a May 2, 2023 earnings release, Defendant has engaged in a calculated pattern of denial and obfuscation. (Id. ¶ 6.) In his email, Musser explicitly directed managers to reduce workforce, stating the company was "overstaffed by 2,000 employees" (approximately a 10% reduction) and warned it "could be as high as 20%," emphasizing that attrition would not be sufficient to address the issue. (Id.) This directive was later publicly confirmed in the May 2, 2023 earnings release where Musser stated, "We are adapting and working diligently to bring expenses in line with lower revenue by lowering headcount and payroll expenses without resorting to layoffs." (Id.)

The 2022 and 2023 Annual Reports confirm this reduction occurred, showing employee headcount decreased from "approximately 20,000 people" at the end of 2022 to "approximately 18,000 people" by the end of 2023, precisely the 2,000-employee (10%) reduction Musser directed in his January 24, 2023 email. (Id. ¶ 7.) Yet astonishingly, Defendant has failed to produce even the January 24, 2023 email itself in discovery and brazenly stated in its answer to Interrogatory No. 16 that Expeditors "did not implement[] work force reductions between January 1, 2022 and the present." (Id. ¶ 8 & Ex. 1.)

This outright contradiction of its own public documents underscores Defendant's systemic refusal to acknowledge the

existence of any workforce reduction, claiming Plaintiff's questions "assume the truth of allegations" they deny, while simultaneously declining to specify which allegations they dispute. (Id. Ex. 1.) Defendant has strategically limited its production to routine personnel documents like performance reviews and payroll records, while withholding all materials related to the alleged workforce reduction program that would be directly relevant to Plaintiff's claims of discriminatory termination.

1. **Overarching Problems with Interrogatory and Document Request Responses**

    a. **Improper Boilerplate and General Objections**

    Defendant begins both its interrogatory responses and document request responses with a series of "General Objections" or "Preliminary Statements" that it incorporates into each specific response. These blanket objections are improper and insufficient under the Federal Rules of Civil Procedure and Local Rules. In Jiang v. Kobe Japanese Steakhouse, Inc., the court explicitly rejected similar omnibus objections as "plainly improper" and "tantamount to not making any objection at all" (2024 WL 4872395 at *8).

    b. **Cut-and-Paste Objections Unrelated to Specific Requests**

    The responses demonstrate a pattern of carelessly copied objections that don't align with the actual requests. For example:

- In Interrogatory No. 12 (regarding severance agreements), Defendant objects that it seeks information about "all employees placed on a performance improvement plan," completely unrelated to the interrogatory about severance agreements. (Clermont Aff. IV Ex. 1.)

- In Document Request No. 20 (regarding separation agreements), Defendant objects by referring to "all separation agreements" while the request actually seeks specific agreements with defined parameters. (Id.)

- In several requests, Defendant objects to phrases that don't even appear in the request, revealing a clear cut-and-paste approach, such as in its response to Interrogatory No. 12. (Id.)

**c. Vagueness Objections to Common Terms**

Defendant routinely objects that standard business terms are "vague and ambiguous," including:

- "Workforce reduction program" (despite CEO Musser's email using similar terminology)

- "Financial impact" (a standard financial reporting term)

- In Document Request No. 12, Defendant objects to basic terms like "directive," "implementation," and "guidelines" as vague (Id. Ex. 2.)

- In Document Request No. 18, Defendant claims terms like "public statements," "website content," and "recruitment materials" are vague (Id. Ex. 2.)

These objections to common terms are excessively broad and serve to obscure the central issues of this case. For instance, Defendant's objection to the term "workforce reduction program" is particularly egregious given that it directly relates to CEO Musser's January 24, 2023 email, which is pivotal to Plaintiff's claims. By labeling such terms as vague, Defendant effectively seeks to avoid providing any meaningful information on the core issues of the litigation. This tactic not only hinders

Plaintiff's ability to obtain relevant discovery but also undermines the integrity of the discovery process itself.

### d. Unsupported Privilege Claims Without Required Logs

Defendant objects to numerous interrogatories and document requests on attorney-client privilege and work product grounds but has not provided a privilege log as required by Fed. R. Civ. P. 26(b)(5)(A) and Local Rule 34.1(e). For example, Defendant objects to requests 2, 4, 5, 6, 7, 12, 13, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 52, 53, 54, and 55 on privilege grounds without providing the required log in its response to the Plaintiff's Request for Production of Documents. (Id.) The parties' Joint Statement (Doc No. 33) expressly contemplated compliance with privilege log requirements, but despite this and Defendant's objections on privilege grounds in its responses, Defendant has not produced a privilege log as required by the rules.

### e. Contradictory Positions Across Responses

Defendant takes internally contradictory positions. Most notably, it denies implementing any workforce reductions between January 1, 2022, and the present (Interrogatory No. 16), while simultaneously objecting to document requests about the workforce reduction program described in Mr. Musser's January 24, 2023 email by claiming they "assume the truth of allegations" rather than simply stating no such documents exist. (Clermont Aff. IV Ex. 1.)

### 2. Specific Issues with Interrogatory Responses

#### a. Incomplete and Evasive Answers

On those rare occasions when Defendant responded to an interrogatory, it has provided only vague, incomplete answers, offering conclusory statements without the substantive information requested. For example, in response to Interrogatory No. 6 regarding the reasons for Plaintiff's termination, Defendant provides only general assertions about performance issues without the specific details requested. (Id.)

#### b. Refusal to Provide Relevant Information

Defendant declined to provide information about other terminated employees despite their relevance to Plaintiff's claims (Interrogatories 2, 11, 14, 23; Document Requests 13, 19, 20, 21, 37). (Id.)

#### c. Limited Responses Regarding Workforce Reduction Program

Defendant provided no documents or information regarding its workforce reduction program referenced in Plaintiff's complaint (Interrogatories 3, 4, 5, 19, 22; Document Requests 12, 18, 22, 24, 25, 26, 28, 29, 40, 43). (Id. Ex. 1 & 2)

#### d. Refusal to Produce Documents Related to Equity Compensation

Defendant declined to produce documents related to employee equity compensation despite its relevance to Plaintiff's claims (Interrogatories 13, 14; Document Requests 47, 48, 49, 50, 51). (Id.)

### 3. Specific Issues with Document Request Responses

#### a. Failure to Identify Responsive Documents

Defendant has made a partial production but failed to identify which documents respond to which specific requests, making it impossible to determine if the production is complete or responsive to any particular request. (Id. Ex. 2) The limited production appears to consist primarily of portions of Plaintiff's own personnel file, but even this production appears incomplete. (Id. ¶ 12.)

#### b. Wholesale Refusal to Produce Key Documents

Most concerning is the pattern of wholesale refusal to provide discovery on the central issue in this case: Mr. Musser's January 24, 2023 email directing a workforce reduction of approximately 2,000 employees. Despite the centrality of this document to Mr. Carrabes' claims, Defendant refuses to produce any related documents. For example:

- Request No. 12: Refuses to produce documents relating to the directive in Musser's email (Id. Ex. 2.)

- Request No. 18: Refuses to produce documents related to Expeditors' no-layoff policy (Id.)

- Request No. 24: Refuses to produce communications concerning implementation of the workforce reduction program (Id.)

- Request No. 25: Refuses to produce documents concerning meetings or training for managers on workforce reductions (Id.)

### c. Improper Objections Based on Unsubstantiated Burden Claims

Defendant routinely objects that requests are "overly broad" or "unduly burdensome" without providing any specifics about the alleged burden. For example:

- Request No. 18 (no-layoff policy documents): Objects as "not reasonably limited in time or scope" despite the clear request for documents from January 1, 2019, to present (Id.)

- Request No. 52 (outside consultants for terminations): Objects as "not reasonably tailored" without explaining why locating such documents would be burdensome (Id.)

### d. Internal Inconsistency

Defendant denies the existence of any workforce reduction program in its interrogatory responses while simultaneously refusing to produce documents related to the same program in document responses. For example, it denies workforce reductions in Interrogatory No. 16 but then objects to Request No. 12 about Musser's email as "assuming the truth of allegations" rather than simply stating no responsive documents exist. (Id.)

### e. Refusal to Answer Whether Workforce Reduction Was a Factor in Musser's Retirement

Defendant's refusal is not limited to documents about the workforce reduction itself. In response to Request No. 54, which sought documents regarding whether the workforce reduction program played a role in Mr. Musser's retirement, Defendant did not simply deny the existence of such documents or assert there was no connection. (Id.) Instead, Defendant refused to answer at all, hiding behind boilerplate objections. (Id.) If the

workforce reduction played no role in Musser's retirement, Defendant could have simply said so. Its refusal to do even that underscores its lack of transparency on this central issue.

**II.  Issues Regarding Rule 30(b)(6) Corporate Representative Designation**

On April 11, 2025, Defendant responded to Plaintiff's Rule 30(b)(6) notice with a detailed letter raising various objections to the proposed topics. (Id. ¶ 14 & Ex. 6) While Defendant indicated a willingness to provide a witness for some limited topics, several key areas relevant to Plaintiff's claims remain in dispute, including:

1. Information about the workforce reduction described in the January 24, 2023 email from CEO Jeffrey Musser (Id.)

2. The use of Performance Improvement Plans in employment decisions (Id.)

3. Information regarding the treatment of unvested equity awards for terminated employees (Id.)

Moreover, Defendant has objected to the Rule 30(b)(6) deposition notice, claiming the information could be obtained through written discovery requests, while simultaneously refusing to provide substantive responses to those very written discovery requests. (Id. Ex. 2 & 6)

**III. Deposition Scheduling Challenges**

Plaintiff has also encountered challenges in scheduling the deposition of Tracy Peveri, Plaintiff's former supervisor and a key witness. Plaintiff's counsel,

who is based in Hong Kong, was traveling to the United States from April 19 to May 8. Counsel asked Attorney Lynch if he would accept service of deposition subpoenas on behalf of Expeditors, and Lynch indicated that subpoenas were not needed as Expeditors would voluntarily produce its employees for depositions. (Id. ¶ 15.) Although Plaintiff's counsel was in the United States, he was not scheduled to be in Boston. (Id. ¶ 16.) However, after agreeing to a date to take Ms. Peveri's deposition, Defendant cancelled it and refused to provide an available date during the time Plaintiff's counsel was scheduled to be in the United States, instead opting to pick the day they knew counsel was leaving. (Id.)

## IV. Inconsistent Positions on Discovery Topics

Adding to these challenges are apparently inconsistent positions regarding relevant evidence. For example, Defendant served Requests for Admission concerning anonymous emails sent from a Proton account (Id. ¶ 17 & Ex. 7.), yet raised relevance objections to Plaintiff's discovery requests regarding the same emails (Document Requests 45, 46). (Id. Ex. 2) Defendant previously addressed these emails in its Motion to Set a Status Conference (Doc No. 34).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." The First Circuit evaluates good cause primarily by examining the diligence of the party seeking the amendment. O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004).

When significant discovery issues arise, courts regularly find good cause to extend discovery deadlines to allow for their proper resolution, especially where, as here, the opposing party's conduct is responsible for the delay. Bernardi Ortiz v. Cybex International, Inc., 2018 WL 2448130, at *7 (D.P.R. May 30, 2018) (extending discovery where additional time was needed to address discovery disputes); Bartlett v. Mutual Pharmaceutical Co., 2009 WL 3614987, at *7 (D.N.H. Nov. 2, 2009) (finding that an extension of discovery is an appropriate remedy when discovery issues arise).

Local Rule 37.1 mandates that parties confer in good faith to resolve discovery disputes before seeking court intervention. Plaintiff intends to adhere to this procedure in addressing the current discovery issues, even though Defendant was unable to confer within the 14 days provided by the rule. However, given Defendant's past conduct, Plaintiff anticipates that these conferences will not lead to a resolution but will instead become a further point of contention regarding the manner and timing of their conduct.

**ARGUMENT**

**A. Good Cause Exists to Extend the Discovery Deadlines**

Plaintiff has demonstrated the requisite good cause for extending the discovery deadlines under Rule 16(b)(4). As in Ortiz, additional time is needed to address discovery disputes through proper procedures. 2018 WL 2448130, at *7.

**1. Plaintiff Has Been Diligent in Pursuing Discovery**

Plaintiff has pursued discovery with diligence since the issuance of the Scheduling Order. Plaintiff promptly served comprehensive written discovery requests and sought depositions of key witnesses, including a Rule 30(b)(6) deposition of the corporate defendant. (Clermont Aff. IV ¶¶ 3, 14-15.) Plaintiff's counsel has made travel arrangements to conduct depositions. (Id. ¶ 16.) Any delay in completing discovery is not attributable to Plaintiff's lack of diligence.

**2. Additional Time is Needed to Address Discovery Issues**

As detailed above, there are significant issues with Defendant's discovery responses that need to be addressed through a Rule 37.1 conference and almost certainly through motions practice. In Ortiz, the court found good cause to extend discovery where time was needed to "address the discovery disputes and complete meaningful discovery." 2018 WL 2448130, at *7.

The court in <u>Ortiz</u> also emphasized the importance of Rule 30(b)(6) depositions, noting that "even if the substance of the information ultimately provided through a 30(b)(6) deposition mirrors that of the testimony given by the corporation's employees or other witnesses, a party 'still is entitled to tie down the definitive positions' of the corporation rather than those of the individuals who work for it." Id. at *9. Resolving the disputes regarding the Rule 30(b)(6) deposition in this case will require additional time.

### 3. The Requested Extension is Reasonable and Necessary

Plaintiff requests a sixty-day extension of all discovery deadlines. This extension is reasonable and necessary to:

- Conduct Local Rule 37.1 conferences regarding the outstanding discovery issues, which Defendant was unable to attend during the 14 day period provided by the rule.

- Resolve disputes regarding the Rule 30(b)(6) deposition scope

- Complete key witness depositions, including Tracy Peveri

- Allow for follow-up discovery as needed

The extension will not significantly impact the overall case schedule, as there are still several months before expert discovery is scheduled to begin on October 6, 2025. However, the Plaintiff does anticipate it may be necessary to seek further extensions should Defendant's litigation conduct persist.

### B. The Extension Will Allow for Orderly Resolution of Discovery Issues

Plaintiff has made good-faith efforts to obtain discovery and intends to follow the procedures outlined in Local Rule 37.1

to resolve the current issues. The requested extension will allow time for these procedures to work effectively without the pressure of looming deadlines.

As noted in Ortiz, "extending the period will make possible [the] corporate deposition and any additional discovery necessary to wrap up this phase of the litigation." 2018 WL 2448130, at *7. The court there found that "[t]he time, expense and burden of extending the discovery window do not outweigh the likely benefit of producing information in conformity with the Rules." Id.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to extend all discovery deadlines by sixty days as follows:

- Written discovery requests deadline: from May 12, 2025, to July 12, 2025

- Fact discovery deadline: from September 2, 2025, to November 3, 2025

- Motion to amend deadline from April 7, 2025, to June 7, 2025

- Plaintiff's expert disclosure deadline: from October 6, 2025, to December 5, 2025

- Defendant's expert disclosure deadline: from November 6, 2025, to January 6, 2026

- Expert discovery deadline: from December 17, 2025, to February 17, 2026

>Michael Carrabes, Plaintiff
>By his attorney,
>
>_____
>Adam Clermont
>6 Liberty Square
>PMB 226
>Boston, MA 02109
>Tel: (413) 841-1270(Massachusetts)
>Tel: +852 9086 3191(Hong Kong)
>E-mail: aclermont@attorneyapc.com
>BBO No.: 639769

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

>/s/ Adam Clermont
>Adam Clermont