**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Michael Carrabes, <br><br> Plaintiff, <br><br> v. <br><br> Expeditors International of Washington, Inc., <br><br> Defendant. | No. 1:24-CV-12142 |

## **OBJECTIONS TO REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Plaintiff Michael Carrabes respectfully submits these objections to the Magistrate Judge's Report and Recommendation ("R&R") on Plaintiff's Motion to Amend Complaint (Doc No. 72). For the reasons set forth below, Plaintiff objects to the R&R's recommendation to deny leave to amend with respect to proposed Counts V, VII, VIII, and IX.

## **Legal Standard**

District courts review a magistrate judge's report and recommendation on dispositive motions de novo. 28 U.S.C. § 636(b)(1)(C). While motions to amend are generally non-dispositive, the R&R correctly notes that "where, as here, the court concludes that allowing amendment with respect to certain proposed new claims would be futile, it follows the practice of other courts in this circuit by issuing a report and recommendation." (Doc No. 72 at pg. 2 n.1). Accordingly, this

Court should review de novo the Magistrate Judge's recommendations regarding the futility of Plaintiff's proposed amendments. Under Fed. R. Civ. P. 15(a)(2), leave to amend should be "freely give[n] when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962).

## **Objection to Denial of Interference with Contractual Relations Claim (Count IX)**

The R&R erroneously recommends dismissal of Plaintiff's interference with contractual relations claim based on the conclusion that "the PAC does not sufficiently plead that there was any enforceable contract" (Doc No. 72 at ¶ 26). This conclusion rests entirely on provisions in the Handbook, which the R&R incorrectly assumes Plaintiff received and agreed to.

There is nothing in the record indicating the Plaintiff was ever presented with the Handbook in question or agreed to its terms. The only evidence that the Code is part of the Handbook comes from materials submitted by Defendant, not from Plaintiff's allegations. Critically, the Code itself does not reference the Handbook at all, nor does it incorporate the Handbook's disclaimers or at-will employment provisions.[1] The Magistrate Judge improperly considered this extra-pleading

---

[1] The Plaintiff denies he was ever presented with the Handbook submitted by the Defendant. Even if Plaintiff were presented with a Handbook at some point in the past, the facts alleged in the PAC support the claim that the Code of Conduct, which Plaintiff was required to review and sign annually, modified any earlier employment agreement. The Code contains no reference to being subordinate to the Handbook, includes no disclaimers, and was treated by Defendant itself as a binding document in other proceedings.

material to determine that disclaimers in the Handbook negated promises in the Code.

In contrast, the proposed amended complaint specifically alleges that Plaintiff was required to sign the Code every year and abide by its terms. Paragraph 25 of the PAC alleges that the Plaintiff, like all Expeditors employees, had to certify that they complied with the Code and to acknowledge that violation of the Code could result in termination. Plaintiff further alleges that he "understood that his employment with Expeditors depended on his accepting the terms of the Code, and he 'reasonably believed' that Expeditors agreed to be bound by the Code and that Expeditors treated it as a 'binding contract' between it and its employees" (Doc No. 72 at ¶ 4).

Significantly, even Defendant itself has asserted in another proceeding that the Code of Business Conduct is a binding document that governs its employment relationships. In <u>Expeditors International of Washington, Inc. v. Cadena Santillana</u>, No. 2:20-cv-00349-RAJ-BAT (W.D. Wash.), Defendant's Vice President, Associate General Counsel, and Chief Ethics & Compliance Officer, Kevin Osborn, swore under penalty of perjury that the Code "applies to every employee, director, and officer worldwide" and governs "consistent (and, in many instances, identical) standards, policies, and regulations" across the company. (Doc. No. 50-1). Having taken the position in other

litigation that the Code is binding on employees, Defendant cannot now deny that the Code creates enforceable obligations.

The R&R's analysis under <u>Jackson v. Action for Boston Community Development, Inc.</u>, 525 N.E.2d 411 (Mass. 1988), improperly considers factors related to the Handbook rather than focusing on the Code itself. The Code, which Plaintiff was required to review, sign, and comply with annually, contains no disclaimers indicating it was not binding on the company. The proposed amended complaint specifically alleges that "The Code did not contain any 'disclaimers... that indicated it was not legally binding' on the company" (Doc No. 72 at ¶ 4).

The R&R's conclusion that "not one of the <u>Jackson</u> factors supports a finding that the Handbook, or the Code contained in it, constitutes a binding contract" (Doc No. 72 at ¶¶ 25-26) fails to separately analyze the Code as an independent document, which is how it was presented to Plaintiff according to the allegations in the PAC.

### **Objection to Denial of Promissory Estoppel Claim (Count V)**

The R&R erroneously recommends dismissal of Plaintiff's promissory estoppel claim based on the flawed conclusion that Expeditors' "no-layoff" promise was impermissibly vague. This ignores Plaintiff's specific allegations that Expeditors formalized this promise through binding corporate communications, transforming it into a definite, reliance-inducing representation.

Expeditors embedded its "no-layoff policy" in SEC-filed annual reports and proxy statements (Doc No. 28-1 at ¶¶ 119-121), publicly branding itself as "a paragon of employee job security" and marketing this policy through its website, social media, and external communications to recruit and retain employees. Critically, CEO Musser reaffirmed this commitment in his May 2, 2023 press release boasting that headcount reductions occurred "**without resorting to layoffs**" (Doc No. 28-1 at ¶ 127), even as the company simultaneously executed a scheme to terminate over 2,000 employees under fabricated pretenses of "cause." These are documented, recurring corporate promises, not vague assurances.

The R&R's reliance on Treadwell and O'Brien, cases involving isolated oral promises, is misplaced. Here, Expeditors' quantifiable commitment to avoiding layoffs "even during economic downturns" (Doc No. 28-1 at ¶ 119) was materially breached by its covert termination scheme, which fabricated performance deficiencies to disguise economic layoffs. Plaintiff reasonably relied on this formalized policy in declining alternative employment opportunities (Doc No. 28-1 at ¶ 357), and his resulting harm is precisely the injustice promissory estoppel remedies.

The Magistrate's analysis further errs by importing the Handbook's disclaimers to defeat this claim. Plaintiff was never provided the Handbook, and the "no-layoff" promise arose from

standalone corporate communications, not the Handbook. The Code of Conduct, which Plaintiff *did* receive annually and was required to certify compliance with, reinforced Expeditors' "absolute commit[ment] to abiding by" ethical principles (Doc No. 28-1 at ¶ 30), validating Plaintiff's reliance on its public promises. Where Expeditors touted its no-layoff policy as a corporate virtue to shareholders and employees alike, while systematically firing thousands under false pretenses, the R&R's futility finding rewards institutionalized dishonesty and ignores well-pled facts demonstrating a definite promise.

### **Objection to Denial of RICO Claims (Counts VII and VIII**)

The R&R erroneously concludes that Plaintiff fails to allege predicate acts under RICO. This recommendation is based on an unduly narrow reading of the proposed amended complaint and a misapplication of the legal standard for wire fraud allegations in the RICO context.

### **A. Plaintiff Has Adequately Pleaded Predicate Acts Under RICO**

The R&R incorrectly limits its analysis to only two alleged predicate acts: Musser's January 24, 2023 email and the May 2, 2023 press release. However, the proposed amended complaint contains numerous additional allegations of wire fraud that satisfy Rule 9(b)'s particularity requirements.

Paragraph 128 of the proposed amended complaint alleges: "These communications, in addition to other communications and

emails sent between Expeditors leadership and its subsidiaries, 'led managers to create pretextual performance reviews, [and] fabricate documentation and false misconduct allegations'; these communications therefore 'constitute predicate acts of wire fraud pursuant to 18 U.S.C. § 1343.'" The PAC provides specific examples of such fraudulent communications, including fabricated performance reviews for Plaintiff and other employees.

The proposed amended complaint provides detailed allegations regarding multiple employees who were targeted through similar fraudulent communications as part of the same scheme. For instance, Paragraphs 214-281 detail how other employees received fabricated performance reviews, false disciplinary notices, and coercive communications, all transmitted via interstate wires, as part of the same covert termination scheme.

**B.     The Alleged Communications Constitute Wire Fraud**

The R&R erroneously concludes that Musser's January 24, 2023 email does not evidence an "intent to deceive." However, the email explicitly directed managers to "begin the process of trimming your current underperforming staff" while simultaneously acknowledging Expeditors' history of not conducting layoffs. The email instructed managers to document alleged performance issues to create a false narrative that terminations were performance-based rather than part of a mass reduction in force.

This deliberate instruction to create pretextual documentation to disguise the true nature of terminations plainly demonstrates an intent to deceive employees and the public. The proposed amended complaint alleges that Expeditors used these interstate wire communications to implement a fraudulent scheme to terminate employees under false pretenses while maintaining the appearance of performance-based separations. This deception allowed Expeditors to avoid the negative publicity associated with layoffs, trigger the forfeiture of unvested employee benefits, and systematically deprive employees of compensation they had earned.

## **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court reject the R&R's recommendations to deny leave to amend with respect to proposed Counts V, VII, VIII, and IX, and instead grant Plaintiff's motion to amend in its entirety.

Respectfully submitted,
For and on behalf of the Plaintiff,

/s/ Adam Clermont
Adam Clermont
6 Liberty Square
PMB 226
Boston, MA 02109
Tel: (413) 841-1270 (Massachusetts)
Tel: +852 9086 3191 (Hong Kong)
E-mail: aclermont@attorneyapc.com
BBO No.: 639769

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ Adam Clermont
Adam Clermont
