UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL CARRABES,<br><br>                Plaintiff,<br><br>     v.<br><br>EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.,<br><br>                Defendant. | Civil Action No. 1:24-cv-12142-AK |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Defendant Expeditors International of Washington, Inc. ("Expeditors") and non-parties Tracy Peveri ("Peveri") and Brian Carrabes[1] submit this response to plaintiff Michael Carrabes' objections (Doc No. 73) to Magistrate Judge M. Page Kelley's Report and Recommendation ("Recommendation") (Doc No. 72) on Plaintiff's Motion to Amend (Doc No. 28). In his proposed amended complaint (Doc No. 28-1), Plaintiff plows the same barren soil as other unsuccessful plaintiffs who sought to distort a routine employment dispute into a civil Racketeer Influenced and Corrupt Organizations ("RICO") claim or who sought to metamorphose an employer's standard handbook and related policies into an enforceable contract. However, when this Court separates the wheat from the chaff—as Magistrate Judge Kelley does in the Recommendation—it is clear that Plaintiff's attempt to substitute voluminousness for viability fails, and his proposed amendments should be denied.

---

[1] Peveri and Brian Carrabes are represented by undersigned counsel for Expeditors. Peveri and Brian Carrabes are Expeditors employees, and Plaintiff seeks leave to amend his complaint to assert claims against them in their individual capacity.

I.  **LEGAL STANDARD**

When a magistrate judge issues proposed findings and recommendations for a dispositive pretrial matter, a party may file specific written recommendations within 14 days. Fed. R. Civ. P. 72(b)(2). If a party files a timely objection, the district judge must make a *de novo* determination of any part of the magistrate judge's disposition to which an objection has been made. Kris v. Behavioral Health Servs., Case No. 4:24-cv-40138-MRG, 2025 WL 1540850, at *2 (D. Mass. May 30, 2025).

II. **PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST PEVERI AND BRIAN CARRABES**

This Court should adopt Magistrate Judge Kelley's recommendation to deny Plaintiff's attempt to add claims of intentional interference with contractual relations against Peveri and Brian Carrabes. (Doc No. 72, pp. 23-26.) As an initial matter, there is no legal basis for Plaintiff's assertion that Magistrate Judge Kelley "improperly considered … extra-pleading material" when she considered Expeditors' employment policies in deciding whether Plaintiff adequately pled that these policies constituted a contract between Plaintiff and Expeditors. (Doc No. 73, pp. 2-3.) Rather, it is well-established law that a court may consider the contents of an employer's personnel policies at the 12(b)(6) stage if the plaintiff relies on the policies to allege a breach of contract claim. See Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007); Bell v. Rinchem Co., Inc., C.A. No. 4:14-40177-TSH, at *13 n.19 (D. Mass. Dec. 2, 20214). As such, Magistrate Judge Kelley properly considered the documents proffered by Expeditors. See id.

Plaintiff's substantive objections fare no better. (Doc No. 73, pp. 2-4.) Expeditors' employee handbook ("the Handbook") explicitly states on the very first page that the Handbook is a summary of many of Expeditors' policies; Expeditors has the right to amend, change or terminate any policy without the consent of any employee; the "following policies and guidelines

do not create any contract or employment rights"; that employment with Expeditors is at will[2]; and the at will employment relationship cannot be altered, except by written agreement executed by the employee and a company officer. (Doc No. 49 ¶ 4, Ex. A; Doc No. 42-1, p. 3.) The very first chapter of the Handbook then explicitly and unequivocally incorporates the Code of Business Conduct into the Handbook. (Doc No. 42-1, pp. 8-9.)

Additionally, Magistrate Judge Kelley properly weighed the factors articulated by the Supreme Judicial Court to determine whether, under Massachusetts law, a personnel manual or policy constitutes a binding contract. Hinchey v. NYNEX Corp., 144 F.3d 134, 141 (1st Cir. 1998); O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 690-91 (1996); Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 14-15 (1988). These factors include whether (1) the employer retained the right to unilaterally modify terms; (2) the terms of the manual were not negotiated; (3) the manual stated that it provided only guidance regarding the employer's policies; (4) no term of employment was specified in the manual and (5) the employee did not sign the manual to manifest assent. Id. Here, the factors weigh against finding that Plaintiff sufficiently alleges the existence of a contract: (1) Expeditors explicitly, repeatedly retained the right to unilaterally modify terms of the Handbook and the Code; (2) Plaintiff does not allege he negotiated any terms of the Handbook or the Code; (3) the Handbook explicitly stated that the handbook and policies contained therein—including the Code—merely summarized and provided guidance on Expeditors' policies; and (4) neither the Handbook nor the Code specified a term of employment because Plaintiff's employment with Expeditors was at will. See id. Magistrate Judge Kelley also properly rejected Plaintiff's argument that just because he alleges he signed the Code on an annual basis, the Code constituted an enforceable contract, an argument that other courts have also

---

[2] Plaintiff admits he was an at will employee of Expeditors. (Doc No. 28-1 ¶ 21.)

rejected. See Bell, 2014 WL 11290899, at *14; Chilson v. Polo Ralph Lauren Retail Corp., 11 F. Supp. 2d 153, 157 (D. Mass. 19980. Faced with this clear and unequivocal precedent disposing of Plaintiff's proposed contractual interference claim, Plaintiff objects to the Recommendation because, Plaintiff claims, Expeditors has treated the Code as "a binding document that governs its employment relationships" because the Code "'applies to every employee, director, and officer worldwide." (Doc No. 73, p. 3.) Plaintiff then concludes that "[h]aving taken the position in other litigation that the Code is binding on employees, Defendant cannot now deny that the Code creates enforceable obligations." (Id. pp. 3-4.) Plaintiff's argument misunderstands the fundamental nature of employer personnel policies and ignores the analysis required by O'Brien and its progeny. See O'Brien, 422 Mass. at 690-91; Bell, 2014 WL 11290899, at *14; Chilson, 11 F. Supp. 2d at 157. Of course the Code "applies" to Expeditors employees—the very purpose of an employer's handbook or specific policy contained therein is to establish policies applicable to its employees. See id. However, this obvious fact is irrelevant to the question of whether the policy constitutes a *contract*, with enforceable obligations on both sides. See id. Rather, the question of whether an employer's policy rises to the level of a contract is governed by the O'Brien analysis, and, in this matter, these factors clearly establish that Plaintiff does not and cannot allege that these policies constitute contracts between Expeditors and its employees, as Magistrate Judge Kelley concluded. See id.

Thus, this Court should adopt the Recommendation as to Plaintiff's contractual interference claim and deny Plaintiff's motion to amend to add this claim against Peveri and Brian Carrabes. See O'Brien, 422 Mass. at 690-91; Bell, 2014 WL 11290899, at *14; Chilson, 11 F. Supp. 2d at 157.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL AGAINST EXPEDITORS

Magistrate Judge Kelley correctly determined that Expeditors' alleged public statements regarding a "no layoff" policy were, as a matter of law, insufficient to establish a claim of promissory estoppel.[3] (Doc No. 72, pp. 17-18.) In his Objection, Plaintiff asserts that Expeditors' alleged statements regarding a "no layoff policy" led him to "declin[e] alternative employment opportunities," which, he then contends without any citation to any applicable precedent, "is precisely the injustice promissory estoppel remedies." (Doc No. 73, p. 5.) However, Plaintiff's cursory, conclusory argument is completely undone by the numerous cases cited by Magistrate Judge Kelly in her Recommendation—and by Expeditors in its opposition (Doc No. 54) and sur-reply (Doc No. 55)—rejecting similar, if not identical, attempts by plaintiffs to rely on this kind of a general statement regarding an employee's job security. See Costello v. Whole Foods Mkt. Grp., Inc., No. 16-10673-GAO, 2016 WL 4186927, at *6–7 (D. Mass. Aug. 8, 2016); Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 286 (D. Mass. 1987); Upton v. JWP Businessland, 425 Mass. 756, 760 (1997); O'Brien v. Anolog Devices, Inc., 34 Mass. App. Ct. 905, 905–06 (1993). In Treadwell, the plaintiff alleged that through various oral statements and other representations, his employer promised him "secure and continued employment" and that based on these alleged representations, he stayed with his employer instead of "seeking employment elsewhere at a time when he was more marketable"—the same allegations Plaintiff relies upon for his promissory estoppel claim. See 666 F. Supp. at 287. However, the court rejected these allegations as insufficient and dismissed the plaintiff's promissory estoppel claim. See id. Here,

---

[3] In his Objection, Plaintiff does not dispute Magistrate Judge Kelley's conclusion that Expeditors' alleged promises to follow certain disciplinary procedures or to act with "honesty, integrity, and fairness" as described in Expeditors' Code of Business Conduct were also too vague to constitute enforceable promises for a promissory estoppel claim. (Doc No. 72, pp. 18-19.)

Plaintiff essentially repeats the same allegations and attempts, impermissibly, to assert the same promissory estoppel claim. See id.

Additionally, Plaintiff's objection does not address Magistrate Judge Kelley's separate and independent grounds for finding Plaintiff's proposed promissory estoppel claim is futile—namely, that based on Plaintiff's own allegations, Expeditors did not breach any alleged "promise." (Doc No. 72, p. 17.)  As the Recommendation notes, Plaintiff's promissory estoppel theory is "convoluted" and his factual allegations contradict his legal claims—Plaintiff alleges that Expeditors terminated him based upon fabricated criticism of his job performance, *not* that he was laid off but simultaneously claims that Expeditors violated an alleged "no layoff" policy.  (Id.) Thus, as Magistrate Kelley correctly determined, the alleged "no layoff promise was not broken, and plaintiff has no claim on this basis."  See Vacca v. Brigham & Women's Hosp., Inc., 98 Mass. App. Ct. 463, 472-73 (2020).  As such, this Court should adopt the Recommendation denying as futile Plaintiff's motion to amend to add a claim of promissory estoppel.[4]  See id.

### IV. PLAINTIFF FAILS TO STATE A CLAIM FOR RICO VIOLATIONS AGAINST EXPEDITORS

#### A. Plaintiff Does Not Allege Expeditors Committed Predicate Acts of Mail or Wire Fraud

Magistrate Judge Kelley correctly determined that Plaintiff does not, and cannot, allege any violations of RICO, 18 U.S.C. § 1961 et seq., against Expeditors.  (Doc No. 72, pp. 19-23.) This Court should therefore adopt the Recommendation to deny Plaintiff's motion to amend to add those claims.  (Doc No. 72, pp. 19-23.)  In his Objection, Plaintiff asserts—in an entirely conclusory manner and without any legal support whatsoever—that Magistrate Judge Kelley erred in finding that only two communications identified in the proposed amended complaint met the

---

[4] To extent Plaintiff's promissory estoppel claim relies upon alleged promises in the handbook and/or code, such allegations are insufficient for the reasons set forth in Part II above.

heightened pleading requirement of Federal Rule of Civil Procedure 9(b) regarding time, place, and content, which applies to such claims. (Doc No. 73, pp. 6-7.) Instead, Plaintiff relies upon allegations related to other individuals who he alleges were terminated as part of the purported "covert termination program." (Doc No. 73, pp. 6-7.) However, as Magistrate Judge Kelley noted, RICO claims alleging mail or wire fraud as the predicate acts "must be particularly scrutinized" given the "relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 20 (1st Cir. 2000). Here, close scrutiny of the factual allegations cited by Plaintiff demonstrates that these allegations lack the specificity required by Rule 9(b) and do nothing but describe instances in which individuals disagreed with their supervisors' assessment of their job performance—not communications in which Expeditors referred to an alleged no layoff policy or alleged covert termination scheme. (Doc No. 73, pp. 6-7.) As such, the Recommendation properly limited its analysis to the alleged January 24, 2023 e-mail sent by then-CEO Jeffrey Musser instructing managers to take a closer look at staffing and revenues and a May 2, 2023 press release referencing Expeditors' no-layoff policy. (Doc No. 72, pp. 21-22.)

Further, and regardless of what communications this Court considers, Plaintiff's allegations fail at an even more fundamental level: none of the allegations in the proposed amended complaint constitute acts of mail or wire fraud, regardless of whether they meet Rule 9(b)'s heightened pleading requirement. See Jakuttis v. Town of Dracut, Mass., 656 F. Supp. 3d 302, 343 (D. Mass. 2023), aff'd in part, remanded in part sub nom. Jakuttis v. Town of Dracut, 95 F.4th 22 (1st Cir. 2024). As Magistrate Judge Kelley notes in the Recommendation, RICO "provides no cause of action to individuals injured by acts *other than criminal RICO violations*." Nodine v. Textron, Inc., 819 F.2d 347, 349 (1st Cir. 1987). Put simply, for alleged actions of a defendant to

constitute predicate acts of mail or wire fraud for purposes of a civil RICO claim, the acts must be indictable, chargeable, or punishable under mail and wire fraud statutes. See Jakuttis, 656 F. Supp. 3d at 343. For this reason, courts in the First Circuit and numerous courts in other jurisdictions have repeatedly rejected similar attempts to convert routine employment cases into civil RICO claims, even when a plaintiff alleges, as Plaintiff does in his proposed amended complaint, that his employer used interstate mail or wire to make false statements about the plaintiff's job performance and/or reasons for termination. See Beck v. Prupis, 529 U.S. 494, 505–06 (2000); Camelio v. Am. Fed'n, 137 F.3d 666, 670 (1st Cir. 1998); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 46 (1st Cir. 1991) (abrogated on other grounds); Willis v. Lipton, 947 F.2d 998, 1001 (1st Cir. 1991); Pujol v. Shearson/Am. Exp., Inc., 829 F.2d 1201, 1205 (1st Cir. 1987); Nodine, 819 F.2d at 348–49); Lee v. Comprehensive Health Mgmt., Civ. No. 20-00028 JMS-WRP, 2020 WL 4810108, at *5 (D. Haw. Aug. 18, 2020) (alleged discriminatory acts leading to termination, such as violating employer's policies and guidelines, were not mail or wire fraud for purposes of civil RICO claim); Subramanian v. Tata Consultancy Servs. Ltd., 352 F. Supp. 3d 908, 917-18 (D. Minn. 2018) (using mail and e-mail to communicate allegedly false reasons for termination did not constitute mail or wire fraud); Grassick v. Holder, C.A. No. 09-587-PB, 2012 WL 1066691, at *6 (D.R.I. Mar. 28, 2012); Jones v. Enter. Rent A Car Co. of Tex., 187 F. Supp. 2d 670, 678-83 (S.D. Tex. 2002). For example, in Grassick, a court in this circuit dismissed a plaintiff's purported civil RICO claim against her former employer in which the plaintiff alleged that her former employer made false and misleading statements about her and discriminated against her. 2012 WL 1066691, at *6. In dismissing the claim, the court noted that "[l]ike many other plaintiffs before her, [plaintiff] attempts to stretch the RICO statute to reach 'well beyond the bounds of the law's reasonable construction'" to instead cover "a classic employment claim, in which an

employer is alleged to have discriminated and retaliated against an employee." Id. In Grassick, the court further concluded that the plaintiff's allegation that her "supervisors used mail and email and made statements she believes untruthful does not turn those employment claims into mail and wire fraud criminal offenses." Id. Plaintiff's voluminous, proposed amended complaint offers nothing new and does nothing more than repurpose factual allegations that have been rejected by every court presented with a plaintiff attempting to distort an employment discrimination claim into a civil RICO matter. See Beck, 529 U.S. at 505–06; Camelio, 137 F.3d at 670; Miranda, 948 F.2d at 46; Willis, 947 F.2d at 1001; Pujol, 829 F.2d at 1205; Nodine, 819 F.2d at 348–49; Lee, 2020 WL 4810108, at *5; Subramanian, 352 F. Supp. 3d at 917-18; Grassick, 2012 WL 1066691, at *6; Jones, 187 F. Supp. 2d at 678-83. As such, this Court should adopt the Recommendation as to proposed Counts VII and VIII and deny Plaintiff's motion to amend to add civil RICO claims against Expeditors. See id.

### B. Plaintiff Fails to Allege Causation

Additionally, even if Plaintiff had sufficiently alleged predicate acts of mail and wire fraud—and he did not—Magistrate Judge Kelley would have been correct in denying Plaintiff's motion to amend as to the RICO claims because Plaintiff does not allege sufficient facts to find the necessary elements of causation. See Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., 990 F.3d 31, 35 (1st Cir. 2021). To establish causation, Plaintiff must not only allege that he suffered an economic injury but also, specifically, that Expeditors' alleged racketeering conduct caused his injury. See 18 U.S.C. § 1964(c); Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992). To establish causation, Plaintiff must allege sufficient facts showing that the alleged racketeering activity was not only a "but for" cause of his injury but the "proximate cause" as well. Sterling Suffolk Racecourse, 990 F.3d at 35. The "central question" in evaluating proximate

causation in the RICO context "is whether the alleged violation led directly to the plaintiff's injuries." Id. Here, Plaintiff did not, and cannot, sufficiently allege that any purported predicate act by Expeditors caused his termination. See Beck, 529 U.S. at 505–06; Camelio, 137 F.3d at 670.

Plaintiff's claimed "harm" is his alleged wrongful termination from his employment with Expeditors. (Doc No. 28-1 ¶ 371.) However, the Supreme Court and the First Circuit have repeatedly held that an employee's alleged wrongful termination cannot serve as the basis of a civil RICO claim. See Beck, 529 U.S. at 505–06; Willis, 947 F.2d at 1001; Miranda, 948 F.2d at 46; Pujol, 829 F.2d at 1205; Nodine, 819 F.2d at 348–49. In Miranda, an employee alleged that her employer committed a civil RICO violation by terminating her employment as part of her employer's bribery scheme. 948 F.2d at 46. However, the First Circuit held that the plaintiff could not state a civil RICO claim because she was not fired as a means of specifically committing obstruction of justice. Id. In doing so, the First Circuit has noted that allowing a plaintiff to pursue a civil RICO claim premised upon an alleged wrongful termination poses "a serious risk that potential RICO liability be extended beyond any principled boundary in 'justice or policy.'" Willis, 947 F.2d at 1001.

Here, similarly, Plaintiff was not terminated so that Expeditors could allegedly commit mail or wire fraud. See id. Rather, Plaintiff merely alleges that he was terminated, that Expeditors' stated reasons for terminating his employment are untrue, and that Expeditors' real reasons for terminating him were different from, or inconsistent with, Expeditors' alleged public representations of its purported no layoffs policy and/or the reasons identified in his personnel file. (Doc No. 28-1 ¶ 368(a)-(e).). Plaintiff's allegations are just as insufficient as those in the numerous other First Circuit cases in which courts have repeatedly refused to find the existence of proximate

cause for a civil RICO claim arising out of an alleged wrongful termination, even when there was a more direct, alleged connection between the purported illegal activity and the plaintiff's termination.  See Miranda, 948 F.2d at 46; Pujol, 829 F.2d at 1205; Dermesropian v. Dental Experts, LLC, 718 F. Supp. 2d 143, 154 (D. Mass. 2010); Scivally v. Graney, C.A. No. 92-11688-Z, 1993 WL 207758, at *3 (D. Mass. June 7, 1993), aff'd, 21 F.3d 420 (1st Cir. 1994); U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., C.A. No. 01-10583-DPW, 2003 WL 21228801, at *13 (D. Mass. May 21, 2003), aff'd, 360 F.3d 220 (1st Cir. 2004); see also Camelio, 137 F.3d at 672 (noting that "[t]his is the fourth time in recent years that we have been called upon to evaluate the sufficiency of a RICO claim arising from an employment dispute [and] [i]n all four cases, the claim has failed to survive a motion to dismiss.").  As such, this Court should deny Plaintiff's motion to amend as futile because Plaintiff does not and cannot allege causation under RICO.  See id.

### C.    Plaintiff Fails to Allege Distinctiveness Under the RICO Act

Plaintiff's civil RICO claim also fails as a matter of law because Plaintiff does not allege an enterprise that is distinct from Expeditors, the named defendant. See Doyle v. Hasbro, Inc., 103 F.3d 186, 191 (1st Cir. 1996).  Plaintiff alleges that Expeditors, its subsidiaries and its individual employees constituted the alleged enterprise. However, it is axiomatic that "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise." Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir. 1995), as amended on denial of reh'g (July 12, 1995); Kelly v. Waters Corp., No. CV 17-12193-LTS, 2023 WL 2404040, at *5–6 (D. Mass. Feb. 9, 2023); see also McLarnon v. United States, C.A. No. 09-10049-RGS, 2009 WL 1395462, at *4–5 (D. Mass. May 19, 2009); Mear v. Sun Life Assur. Co. of Canada (U.S.)/Keyport Life Ins. Co., C.A. No. 06-12143-RWZ, 2008 WL 245217, at *9 (D. Mass. Jan. 24, 2008).  In Mear, Judge Zobel dismissed a civil RICO claim in which the only named defendant

was a corporation and the alleged wrongful acts were committed by the corporation, its employees and its subsidiaries.  Id.  In doing so, Judge Zobel noted that because "a corporation, can only act through its employees, officers, subsidiaries and agents, the former is not distinct from the latter for the purpose of distinguishing a RICO person from a RICO enterprise."  Id.  Here, Plaintiff's civil RICO claim similarly fails as a matter of law because it does not allege separate and distinct entities.  Id.; see also Rodriguez v. Banco Cent., 777 F. Supp. 1043, 1054 (D.P.R. 1991) ("The distinction requirement is not satisfied by merely naming a corporation and its employees, affiliates, and agents as an association-in-fact, since a corporation acts through its employees, subsidiaries and agents, and would thereby be merely associating with itself."); Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 449 (1st Cir. 2000) (employees and subsidiaries carrying on regular affairs of corporate enterprise are not distinct from enterprise); Odishelidze v. Aetna Life & Cas. Co., 853 F.2d 21, 23–24 (1st Cir. 1988) (upholding dismissal of RICO complaint where enterprise comprised of defendant company and its subsidiaries and employees).

      Rather, Plaintiff merely alleges that Expeditors, the corporate defendant, and various subsidiaries, employees and agents of the company acted together and in concert to conduct Expeditors' corporate affairs, specifically, the alleged "covert termination" scheme. (Doc No. 28-1 ¶¶ 365-379.)  These allegations are insufficient to meet the distinctiveness requirement for a civil RICO claim, and Plaintiff's proposed amendment is therefore futile as to his claim that Expeditors violated § 1962(c) of RICO.  See Bessette, 230 F.3d at 449.  Magistrate Judge Kelley also properly determined that Plaintiff fails to allege a RICO conspiracy claim pursuant to § 1962(d) because when a plaintiff fails to allege a violation of § 1962(c), then the purported § 1962(d) conspiracy claim also fails as a matter of law.  See Miranda, 948 F.2d at 45 n. 4; Rhodes v. Consumers' Buyline, Inc., 868 F. Supp. 368, 377 (D. Mass. 1993).  As such, this Court should adopt the

Recommendation as to Plaintiff's proposed RICO claims and deny Plaintiff's motion to amend. See id.

## V.   CONCLUSION

For the foregoing reasons, this Court should overrule Plaintiff's objections to the Recommendation and adopt the Recommendation denying Plaintiff's motion to amend as to Plaintiff's proposed claims of intentional interference with contractual relations against Peveri and Brian Carrabes (Proposed Count IX); promissory estoppel against Expeditors (Proposed Count V); and violations of RICO against Expeditors (Proposed Counts VII and VIII).

Respectfully submitted,

EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.,

By Its Attorneys,

*/s/ Matthew J. Lynch*
Asha A. Santos, BBO No. 670861
asantos@littler.com
Matthew J. Lynch, BBO No. 689363
mlynch@littler.com

LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone:   617.378.6000
Facsimile:    617.737.0052

Dated: June 27, 2025

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the within document was filed and served electronically by operation of the Court's CM/ECF System upon the following counsel of record on this 27th day of June 2025:

Adam P. Clermont, Esq.
6 Liberty Square
PMB 226
Boston, MA 02109
aclermont@attorneyapc.com

                                                            */s/ Matthew J. Lynch*
                                                            Matthew J. Lynch