UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL CARRABES,<br><br>Plaintiff,<br>v.<br><br>EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., TRACY PEVERI AND BRIAN CARRABES,<br><br>Defendants. | Civil Action No. 1:24-cv-12142-AK |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT WITH PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendants Expeditors International of Washington, Inc. ("Expeditors"), Tracy Peveri ("Peveri") and Brian Carrabes ("Brian Carrabes") (together "Defendants") hereby submit the following Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment. The Affidavits of Matthew J. Lynch ("Lynch Aff."), with exhibits; Tracy Peveri ("Peveri Aff."); Brian Carrabes ("Brian Aff."); Nancy Bowie ("Bowie Aff."); Jenna Connors ("Connors Aff."); Peter Dale ("Dale Aff."); Jennifer Bokavich Christenson ("Bokavich Christenson Aff."); and Joe Scali ("Scali Aff.") cited herein are filed herewith. The relevant excerpts and exhibits from the deposition transcripts of Plaintiff Michael Carrabes ("Pl. Dep."), B. Carrabes ("Brian Dep.") and Tracy Peveri ("Peveri Dep.") cited herein are attached to the Lynch Aff. at Exs. 2, 3 and 4, respectively.

1. Defendant Expeditors International of Washington, Inc. ("Expeditors") is a logistics company that provides end-to-end logistical and supply chain management services. (Aff. Tracy Peveri ("Peveri Aff.") ¶ 4.)

RESPONSE

Undisputed.

2. In 2003, Expeditors hired Plaintiff as a District Sales Executive ("DSE") in Expeditors' Boston office, reporting directly to the District Sales Manager ("DSM"). (Aff. Matthew J. Lynch ("Lynch Aff.") ¶ 4, Ex. 1.)

RESPONSE

Undisputed.

3. Plaintiff's duties included developing client relationships and trying to close revenue and business. (Id. ¶ 5, Ex. 2, Dep. Michael Carrabes ("Pl. Dep.") 25:20-26:6.)

RESPONSE

Undisputed.

4. In 2010, there was an opening for the DSM position, and Plaintiff applied. (Id. 31:9-35:6.)

RESPONSE

Undisputed.

5. Plaintiff interviewed with Peveri, who has been the District Manager since 2008, and another manager, Jim Palmacci. (Id. 37:20-38:16; Lynch Aff. ¶ 6, Ex. 3, Dep. Tracy Peveri ("Peveri Dep.") 13:7-9.)

RESPONSE

Undisputed.

6. Peveri selected Plaintiff for the DSM position in July 2010. (Pl. Dep. 31:9-35:19, 38:8-16.)

RESPONSE

Undisputed.

7. Plaintiff's duties as DSM included leading sales meetings; managing/supporting the sales team; and working with other departments, such as business development. (Id. 40:18-41:13.)

RESPONSE

Undisputed.

8. Plaintiff reported directly to Peveri as DSM. (Id. 57:20-24.)

RESPONSE

Undisputed.

9. Peveri reports to defendant Brian Carrabes, Regional Vice President and Plaintiff's brother. (Lynch Aff. ¶ 7, Ex. 4, Dep. Brian Carrabes ("Brian Dep.") 52:7-53:1-11, 247:8-11.)

RESPONSE

Undisputed.

10. During Peveri's nearly 20 years as District Manager, she has hired and/or promoted many male employees to management positions. (Pl. Dep. 223:9-224:8; Peveri Aff. ¶¶ 6-7.)

RESPONSE

Undisputed.

11. Currently, her management team includes 10 male employees and 5 female employees. (Id. ¶ 8.)

RESPONSE

Undisputed.

12. Plaintiff, who worked with Peveri for more than 20 years and reported directly to her for more than 10 years, testified that she never treated male employees differently than other employees. (Pl. Dep. 223:9-224:8.)

RESPONSE

Disputed. The Plaintiff testified, "I have not witnessed that, not to my -- not that I can recall." (Pl. Depo. 224:7-8)

13. Additionally, numerous current and former Expeditors employees – both male and female – never observed Peveri treat anyone unfairly due to their sex or for any other reason. (Scali Aff. ¶ 22; Brian Aff. ¶¶ 13-14; Connors Aff. ¶¶ 31-32; Bowie Aff. ¶ 33; Bokavich Christenson Aff. ¶ 15.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraphs cited contain hearsay and inadmissible lay opinions.

14. Beginning in 2020, Peveri started to receive complaints about Plaintiff from his team. (Peveri Dep. 169:19-184:5.)

RESPONSE

Disputed. Peveri did not document any of the alleged complaints. (Peveri Dep. 169-172). Peveri also testified that she did not know whether she documented any complaints in notebooks she compiled. (Id. 173, 179). She testified that Jenna Connors "could have forwarded emails," but did not know if those emails still exist. (Id. 181). No emails or composite notebooks have been produced.

15. Alex Finn (male) told Peveri that he struggled with Plaintiff's management style and did not feel supported by Plaintiff. (Id. 170:4-17.)

RESPONSE

Disputed. The statement is hearsay and would not be admissible at trial.

16. Finn believed Plaintiff had "disconnected" from the sales team and that Plaintiff would schedule spur-of-the moment meetings without an agenda, during which he would "vent" at the sales team about one issue or another. (Peveri Aff. ¶ 9.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains hearsay.

17. Finn told Peveri that he and the other three salespeople—Joe Scali (male), Jennifer Bokavich Christenson[1] (female) and Nancy Bowie (female)—started meeting as a group without Plaintiff because Plaintiff was disruptive. (Peveri Aff. ¶ 12.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains hearsay.

18. In 2021, Finn was offered a job with a competitor. (Peveri Aff. ¶ 13.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains hearsay.

---

[1] At the time, Bokavich Christenson went by the name "Jennifer Bokavich."

19. Finn met with Peveri for an hour-and-half to discuss this offer, and Peveri also encouraged Alex to speak with Brian Carrabes, Regional Vice President, and Kanny Satar, who at the time was Vice President of Sales & Marketing – The Americas, which Alex did. (Peveri Aff. ¶¶ 14, 16.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains hearsay.

20. Finn told her that Plaintiff was aloof; that Finn believed he did not have a close relationship with Plaintiff, even though Plaintiff was his direct supervisor; and that these concerns were part of why he was ready to leave Expeditors. (Peveri Aff. ¶ 15.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains hearsay.

21. Finn then declined the competitor's offer. (Peveri Aff. ¶ 16.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. Also, the paragraph cited does not mention an "offer."

22. Finn's near-resignation from Expeditors troubled Peveri because Finn was a good salesman, who Peveri believed had management potential. (Peveri Aff. ¶¶ 17-18.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraphs cited contain hearsay.

23. All of the individuals on Plaintiff's sales team as of 2020 and 2021 were good salespeople. (Pl. Dep. 72:9-17.)

RESPONSE

Undisputed.

24. Members of the team had won the President's Club awards, an internal award given to salespeople for exceptional performance. (Pl. Dep. 65:13-22, 67:22-24; Bokavich Aff. ¶ 6.)

RESPONSE

Undisputed.

25. Bowie would win the award in 2022. (Bowie Aff. ¶ 5.)

RESPONSE

Undisputed.

26. In November 2021, Bokavich Christenson resigned. (Peveri Aff. ¶ 20; Bokavich Christenson Aff. ¶ 13.)

RESPONSE

Disputed. The Bokavich Christenson affidavit does not state that she resigned in paragraph 13.

27. In her discussion with Peveri, Bokavich Christenson relayed her disappointment with how the sales team was managed. (Bokavich Christenson Aff ¶ 14; Peveri Aff. ¶ 21.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraphs cited contain hearsay.

28. Bokavich Christenson believed that while Plaintiff was in charge, team morale was lower than it should have been. (Bokavich Christenson Aff ¶ 7.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains inadmissible lay opinion and is speculative.

29. She also felt like Plaintiff did not trust them and, at times, insulted their professionalism. (Id. ¶¶ 8-9.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains inadmissible lay opinion and is speculative.

30. During some sales meetings, Plaintiff criticized individual salespeople in front of the entire team, which members of the team thought was unnecessary. (Id. ¶¶ 9-10; Connors Aff. ¶¶ 14-18.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraphs are speculative and not based upon personal knowledge. The paragraphs from the Connors affidavit contain inadmissible opinion about how other co-employees were feeling.

31. Bokavich Christenson felt like Plaintiff had a "do as I say, not as I do" approach to managing because, although he required them to tell him any time they would be away from their computer for an hour, he was not available to engage with them. (Bokavich Christenson Aff. ¶¶ 8, 11.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph cited contains inadmissible lay opinion and is speculative.

32. On one occasion, before Bokavich Christeson left, Bokavich Christenson told Bowie that Plaintiff had just sent Bokavich Christenson a sales lead. (Bowie Aff. ¶ 20.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph contains hearsay.

33. Plaintiff had sent the same lead to Bowie the day before. (Id. ¶¶ 20-21.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The paragraph contains hearsay. Also, paragraph 21 expresses inadmissible opinions about how third parties might think.

34. This was an example of Plaintiff's disconnect and lack of communication because a customer will think that Expeditors is a mess if Bowie calls the customer one day, only for a different salesperson to then call the customer the next day. (Id. ¶¶ 21.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. Paragraph 21 expresses inadmissible opinions about how third parties might think.

35. Plaintiff's management of the team was a key factor in Bokavich Christenson's decision to leave Expeditors. (Id. ¶ 14.)

RESPONSE

Disputed. The paragraph does not support the statement cited.

36. Bokavich Christenson's departure meant that half of Plaintiff's sales team had either quit or threatened to quit in the span of approximately one month. (Peveri Aff. ¶¶ 13-17, 20-22.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

37. Bokavich Christenson and Finn were not the only people who reported concerns about Plaintiff. (Peveri Dep. 180:14-205:22.)

RESPONSE

Disputed. Peveri did not document any of the alleged complaints. (Peveri Dep. 169-172). Peveri also testified that she did not know whether she documented any complaints in notebooks she compiled. (Id. 173, 179). She testified that Jenna Connors "could have forwarded emails," but did not know if those emails still exist. (Id. 181). No emails or composite notebooks have been produced.

38. In or around 2021, Scali told Peveri that he was unhappy with Plaintiff's management style and that Scali felt like Plaintiff was not supporting him. (Id. 192:4-197:22.)

RESPONSE

Disputed. The statement is hearsay.

39. Scali and Peveri began meeting regularly to discuss the sales team. (Peveri Aff. ¶¶ 22-23; Scali Aff. ¶ 18.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

40. During a 2022 meeting, Scali became extremely emotional. (Peveri Dep 193:17-197:4.)

RESPONSE

The "fact" cited is undisputed. The remaining lines of testimony do not relate to the fact and contain inadmissible hearsay.

41. Scali told Peveri that he was extremely uncomfortable under Plaintiff's leadership and that he was not happy. (Scali Aff. ¶ 19.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

42. Scali thought that earlier in Plaintiff's time as DSM, Plaintiff would ask what he could do to help the sales team, but now it felt as though Plaintiff was disconnected or distracted. (Id. ¶¶ 13-14.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible lay opinions.

43. In 2021 and 2022, Scali felt like Plaintiff was accusing the sales team of something, which was an example of Plaintiff's lack of trust in the team, and it seemed like Plaintiff was putting undue pressure on the team. (Id. ¶¶ 7, 13, 17.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay and lay opinions.

44. Scali also said that Plaintiff's tone and manner of communicating with Scali and other salespeople were condescending and dismissive. (Peveri Dep 192:4-197:22; Scali Aff. ¶ 11.)

RESPONSE

Undisputed.

45. Scali told Peveri that Plaintiff was so disengaged that the team's actual leader was Jenna Connors, Sales Operations. (Peveri Dep. 194:3-11.)

RESPONSE

Disputed. The statement is hearsay.

46. Scali, who knew that Finn and Bokavich Christenson had already left, said that he knew Bowie was looking for a different role and that Connors was not happy. (Peveri Dep 194:5-10; Scali Aff. ¶¶ 16-20.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay and lay opinions.

47. Bowie reported similar concerns. (Peveri Dep. 187:24-192:3.)

RESPONSE

Disputed. Statements by Bowie are hearsay.

48. Bowie told Peveri that she did not feel supported by Plaintiff and that she did not like the last-minute way that Plaintiff scheduled meetings. (Peveri Dep. 189:3-190:16.)

RESPONSE

Disputed. Statements by Bowie are hearsay.

49. She also said that she did not like the way Plaintiff spoke to the sales team during these meetings. (Id.)

RESPONSE

Disputed. Statements by Bowie are hearsay.

50. Bowie said she was not sure if she wanted to stay at Expeditors. (Id. 190:6-8.)

RESPONSE

Disputed. Statements by Bowie are hearsay.

51. Connors separately told Peveri she was concerned Expeditors would lose the entire sales team. (Peveri Dep. 182:3-23; Connors Aff. ¶ 22.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

52. Connors told Peveri that members of the sales team, particularly Scali and Finn, got frustrated when Plaintiff criticized them individually in team meetings. (Connors Aff. ¶ 16.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. This paragraph lacks reliability. It is either based on hearsay or inadmissible opinion testimony.

53. Connors also noted for at least the last three years, she had often been approached by other department managers, including Josh Brandes (male), Operations Manager, and Jillian Balzarini (female), Export Manager, because they were looking for Plaintiff but could not find him. (Connors Aff. ¶¶ 10-11.)

RESPONSE

Disputed as to paragraph 10 which does not address the fact stated. Undisputed as to paragraph 11.

54. From 2020 through 2023, other department managers complained about Plaintiff. (Peveri Dep. 198:8-205:22.)

RESPONSE

Disputed. Complaints from other department managers are hearsay. Further, the fact stated is not material. For many of those years, the Plaintiff received favorable performance evaluations from Peveri, see *Affidavit of David Heinlein, Exs.5&6* (2020,

2021 Employee Performance Evaluations). Further, the Plaintiff was not fired until February 5, 2024. *Heinlein Aff., Ex. 2*, pp. 176-178.

55. Mike Mazzarella (male), Customs Brokerage Manager, told Peveri that Plaintiff was not supporting Mazzarella's department. (Id. 201:10-203:11.)

RESPONSE

Disputed. Peveri testified, "I cannot give you the year it was that he made that comment to me." (Peveri Dep. 202:7-8). The Plaintiff became the DSM in 2010, SOMF ¶6, and without any reliable timeframe, the fact is not material.

56. Chris Goodwin (male), Customer Retention and Development Manager, noticed that Plaintiff seemed disconnected. (Id. 199:2-200:13.)

RESPONSE

Disputed. Peveri testified that "Chris had a great relationship with Mike," (Peveri Dep. 199), and then she testified, "I would use the word absent or I guess uninvolved." (Id.) The "fact" asserted is not material, vague and unreliable.

57. As a result, Goodwin did work that Plaintiff should have done, such as preparing sales meeting agendas. (Id.)

RESPONSE

Disputed. The situation with the agendas allegedly prepared were prepared, if at all, "either in 2023 or early 2024," (Peveri Dep. 2000), when the Plaintiff was no longer the DSM. The fact is not material.

58. By 2022, Peveri had received complaints about Plaintiff's management style and lack of engagement from numerous male and female employees, including every member of his

sales team. (Peveri Dep. 169:19-205:22; Peveri Aff. ¶¶ 9-28; Scali Aff. ¶¶ 6-19; Connors Aff. ¶ 22.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

59. The sales team seemed on the verge of collapse, given that Bokavich Christenson left, Finn nearly left, and Scali and Bowie were both considering leaving. (Peveri Dep. 169:19-197:22; Peveri Aff. ¶ 28.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

60. Peveri specifically recalls several meetings with Plaintiff in 2020, 2021 and early 2022 where she discussed these issues. (Id. ¶ 29.)

RESPONSE

Disputed. The phrase "these issues," is vague. Further, before Peveri told the Plaintiff that he was being removed as the DSM in 2022, she had never come to him "to discuss anything [he] needed to improve as [DSM]." *MC*, p. 131.

61. When asked at his deposition if Peveri ever told Plaintiff that she was concerned about how the sales team felt about his management before 2022, Plaintiff said, "Yeah. I can't – I don't know if that conversation happened or not." (Pl. Dep. 101:6-10.)

RESPONSE

Disputed. *See*, Response No. 60.

62. Additionally, although Plaintiff claims he was not aware of any dissatisfaction with the sales team, he admits that it "could have happened." (Id. 112:4-11.)

RESPONSE

Disputed. *See*, Response No. 60. Also, the phrase "could have" does meet any evidentiary standard for admissibility.

63. Even though Plaintiff believed that Bowie was complaining about him to Peveri, he never attempted to speak to her about these alleged complaints, despite being her direct supervisor. (Id. 396:21-399:4.)

RESPONSE

Undisputed.

64. In late 2022, Peveri notified Plaintiff that she was removing him from the DSM position. (Id. 121:9-16; Peveri Dep. 17:23-19:9.)

RESPONSE

Undisputed that is what Peveri said. Disputed by the Affidavit of Brian Carrabes submitted by the defendants in support of their motion. See, *Doc. No. 121, Affidavit of Brian Carrabes,* ¶12, "…after I removed him from the DSM position."

65. Although the parties dispute the exact date of this decision, it is undisputed that by no later than December 2022, Peveri told Plaintiff she was removing him from the DSM position. (Pl. Dep. 121:9-16; Peveri Dep. 17:23-19:9.)

RESPONSE

Undisputed.

66. Peveri also documented Plaintiff's issues with collaboration and communication in his 2022 performance evaluation. (Pl. Dep. 133:5-139:24, Ex. 11.)

RESPONSE

Disputed. The 2022 performance evaluation was completed after Peveri told the Plaintiff she was removing him from the DSM position. *TP*, p. 18, 222.

67. Plaintiff never attempted to discuss these comments with Peveri or ask her what they meant. (Pl. Dep. 135:1-139:16.)

RESPONSE

Disputed. There is no evidence or foundation that the Plaintiff ever saw the 2022 EPE before his deposition in May 2026. Further, the Plaintiff testified at that deposition, "So at this point, I'm not in the Sales manager position anymore." "I'd been demoted, but, yeah, I'd been demoted." *MC*, p. 137.

68. Plaintiff testified that, during this time, he told Brian Carrabes that Plaintiff believed he was being treated unfairly, but Plaintiff never said that he believed this had anything to do with the fact that he was a man. (Id. 174:13-175:6.)

RESPONSE

Undisputed as phrased.

69. On December 20, 2022, Expeditors posted the DSM position. (Lynch Aff. ¶ 8, Ex. 5.)

RESPONSE

Undisputed.

70. Plaintiff alleges that Peveri removed him from the DSM position because she wanted to promote a female employee to the DSM role. (Pl. Dep. 127:20-128:12; Lynch Aff. ¶ 9, Ex. 6, Pl. Ans. Ints. Answer No. 5, pp. 15-18.)

RESPONSE

Undisputed.

71. Plaintiff admitted at his deposition that he does not actually know who made the hiring decision. (Pl. Dep. 161:19-21.)

RESPONSE

Undisputed.

72. Peveri was not a decisionmaker. (Peveri Dep. 44:15-45:2.)

RESPONSE

Disputed. Tracy Peveri runs the branch and makes the decisions. *BC*, p. 84. "She controls who she hires, who she fires, who she wants." *BC*, p. 207. Josh Brandes, "may have" sought out input from Peveri about the new DSM. *TP*, p. 46. She does not remember what she told Mr. Brandes about Ms. Bowie in connection with the selection process. *TP*, p.46

73. Rather, the hiring decision was made by three male managers: Brandes, Satar and Peter Dale, Director of Sales and Marketing – Americas. (Id.)

RESPONSE

Disputed. See, Response No. 72.

74. Although Peveri had been involved in the decision to promote Plaintiff to the DSM role in 2010, she stepped back from the 2023 hiring process, in part because Brandes, as the Operations Manager, was about to assume the management of the Business Development team, meaning the DSM would now report directly to him instead of Peveri. (Peveri Dep. 46:15-47:10.)

RESPONSE

Disputed. The citations do not support the information provided. Peveri testified that Brandes's position would not report to her. "And he was taking over the business development team under his responsibilities, *so his position would not report to me*." *TP*, p. 47 (italics added). There is no testimony about the DSM not reporting to Peveri.

75. When Dale asked Peveri why Plaintiff had been removed from the DSM position, she told him that Plaintiff was taking on a "new opportunity." (Dale Aff. ¶ 7.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

76. After speaking with Peveri, Dale had no reason to believe that Plaintiff's employment was not in good standing. (Id. ¶ 8.)

RESPONSE

Undisputed.

77. In or around April 2023, Brandes, Dale and Satar selected Bowie for the DSM position. (Peveri Dep. 44:15-47:10.)

RESPONSE

Disputed. See, Response No. 72.

78. Even though Bowie was selected for the DSM role in April, she was not formally promoted to the position until January 2024. (Bowie Aff. ¶ 31.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

79. Expeditors delayed Bowie's transition to give Plaintiff time to find a new position within the Company. (Peveri Dep. 50:13-51:2.)

RESPONSE

Undisputed.

80. During this time Plaintiff received his DSM salary, along with a percentage of the bonus pool that Peveri allocates to department managers each month. (Id. 110:12-113:10.)

RESPONSE

Undisputed.

81. In January 2023, Peveri reduced Plaintiff's bonus pool percentage from 2% to 1%. (Id. 122:21-24; Lynch Aff. Ex. ¶ 9, Ex. 6, Ans. No. 5, p. 16; Doc No. 77, Pl.'s Am. Compl. at 27-28 ¶ 89.)

RESPONSE

Undisputed.

82. This reduction had nothing to do with Plaintiff's removal from the DSM role. (Peveri Dep. 123:6-10.)

RESPONSE

Disputed. The Plaintiff's bonus pay was reduced 62% from 2022 to 2023. *Heinlein Aff, Exs. 9 & 10*. Also, Peveri testified, "I don't recall my conversation exactly," *TP*, p. 124, when asked about what she told the Plaintiff about why his bonus was being reduced.

83. This reduction was based upon the profitability of the district and other factors having nothing to do with Plaintiff's removal from the DSM role. (Id. 123:11-16.)

RESPONSE

Disputed. When asked if the reduction in the Plaintiff's bonus was due to profitability or result of the percentage change, Peveri testified, "I don't know." *TP*, p. 128. Peveri was asked whether she could state any reasons "why [the Plaintiff's] bonus from the end of 2022 to the end of 2023 was reduced by over $250,000.00." She replied, "Not without any other documentation." *Id.*, p. 129. No other documentation has been produced by the defendants. Further, Peveri was unable to testify whether her bonus amount in 2023 was less than 50% of her 2022 bonus. *Id.*, p. 128

84. At the same time, Peveri increased the bonus pool percentages of two other male managers. (Peveri Aff. ¶ 45.)

RESPONSE

Undisputed.

85. Other Expeditors employees also tried to help Plaintiff find a new position. (Pl. Dep. 153:6-24, Ex. 12.; Brian Aff. ¶¶ 9-10; Peveri Aff. ¶¶ 36-39.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

86. Peveri spoke to Plaintiff about moving back into a sales role on an interim basis while other people looked for a more permanent position for him, but Plaintiff refused. (Peveri Aff. ¶¶ 37-38.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay. Further, there is no mention of the Plaintiff "refusing" a position as stated. Finally, Tracy Peveri never discussed other positions at Expeditors with the plaintiff, *MC*, p. 145; she never suggested he apply for another position, *id*.; and she never told him that there was another position open and that he should look at it. *Id*.

87. On August 8, 2023, Dale forwarded Plaintiff a sales opening in Expeditors' healthcare division. (Pl. Dep. 150:1-152:13, Ex. 11.)

RESPONSE

Undisputed.

88. Plaintiff did not apply. (Id.)

RESPONSE

Disputed. The Plaintiff was unaware of the position until his deposition. MC, p. 150. "[T]here was someone in this job already." Id., pp. 150-151. "This job was never open." Id., p. 151. "I wouldn't even qualify for this job...I have no healthcare experience. And Global Director is a big job over the entire program. That would be a massive jump for me. I just don't have the skill set. Oh, Peter Dale wouldn't think I had he skill set for this either." *Id.*, pp. 151-152.

89. Neither Peveri nor Brian Carrabes ever stopped Plaintiff from applying for a position at Expeditors. (Pl. Dep. 147:3-23; Peveri Aff. ¶¶ 38-40; B. Carrabes Aff. ¶¶ 11-12; Dale Aff. ¶¶ 24-27.)

RESPONSE

Disputed as to the citation to the Affidavit of Peter Dale. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

90. In late 2023 or early 2024, Plaintiff applied for the position of "Regional Manager Aviation & Aerospace Vertical – Americas," in which he would have reported to Dale. (Pl. Dep. 154:4-22, Ex. 13; Dale Aff. ¶ 9.)

RESPONSE

Undisputed.

91. After Plaintiff applied for this position, Dale spoke to Peveri about Plaintiff, and Peveri provided Dale with a favorable reference. (Dale Aff. ¶¶ 9-12.)

RESPONSE

See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

92. When Dale heard rumors that Plaintiff was removed from the DSM position because of a "mutiny" on the sales team, he asked Peveri if there was something he should know. (Id. ¶¶ 10-11.)

RESPONSE

See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

93. Peveri told Dale that Plaintiff was the same great guy he had always been, that he may have been a little frustrated because of how long he had been the DSM, and that he would put that behind him if he had a new opportunity. (Peveri Aff. ¶ 47; Dale Aff. ¶ 13.)

RESPONSE

See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

94. Peveri had also taken steps earlier in Plaintiff's tenure as DSM, before his removal from the position, to help him advance within Expeditors. (Peveri Aff. ¶¶ 52-54.)

RESPONSE

See, Response No. 86.

95. Peveri knew that Plaintiff was interested in becoming a district manager. (Pl. Dep. 231:17-235:14; Peveri Aff. ¶¶ 54-55.)

RESPONSE

Undisputed.

96. As a result, Peveri enrolled Plaintiff in the course to obtain a customs brokerage license, which is, within Expeditors, "the elite license" for an employee to hold. (Pl. Dep. 234:6-13; Peveri Aff. ¶ 54.)

RESPONSE

Disputed. "I think I signed up for the course." *MC*, p. 233.

97. Plaintiff received the training materials for this course. (Pl. Dep. 233:11-234:3; Peveri Aff. ¶ 55.)

RESPONSE

Undisputed.

98. Plaintiff never completed this course. (Pl. Dep. 231:24-232:5; Peveri Aff. ¶ 55.)

RESPONSE

Undisputed.

99. After Plaintiff's employment with Expeditors ended, Peveri found the box of unopened training materials in Plaintiff's office. (Id. ¶ 56.)

RESPONSE

Undisputed.

100. As of late 2023, Plaintiff had been assigned to work in the warehouse, though he was also allowed to spend part of his workdays searching for other jobs within the Company. (Pl. Dep. 157:2-21, 159:1-160:1.)

RESPONSE

Disputed. The Plaintiff was doing nothing other than working in the warehouse at this time. *MC*, p. 157.

101. Plaintiff testified that after he was selected to interview for the aviation position, he was allowed to spend part of his workdays preparing for the interview. (Id. 160:13-161:13.)

RESPONSE

Undisputed.

102. He testified that Jennifer Muise (female), Manager, Distribution Services, allowed him to do this and that Peveri "may have" been part of the decision. (Id.)

RESPONSE

Disputed as phrased. "I just don't recall id I just went to Jennifer and – or if I went to Tracy." *MC*, p. 161

103. Peveri explicitly approved Plaintiff's request to let Plaintiff use working time—for which he was paid—to prepare for the aviation position interview. (Peveri Aff. ¶¶ 47-49.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

104. Plaintiff interviewed for the aviation position in late January 2024 and was in consideration for the position as of February 2024. (Pl. 154:4-22, Dep. Ex. 13; Dale Aff. ¶¶ 21-22.)

RESPONSE

Undisputed.

105. Plaintiff scheduled a meeting with Peveri and Brian Carrabes on February 5, 2024, in Brian Carrabes' office. (Pl. Dep. 176:7-178:13; Peveri Dep. 143:3-19.)

RESPONSE

Undisputed.

106. Prior to the meeting Peveri asked Muise if Plaintiff had come to work that day, and Muise responded a little after 9 a.m. that Plaintiff was not in. (Lynch Aff. ¶ 10, Ex. 7.)

RESPONSE

Disputed. This fact is based upon hearsay and not material.

107. An hour later, Muise told Peveri that Plaintiff said he would not be in and that he would "let [Muise] know about the rest of the week later today." (Id.)

RESPONSE

Disputed. See, Response No. 106.

108. At some point, Plaintiff did arrive at Expeditors on February 5, 2024. (Pl. Dep. 178:22-179:6.)

RESPONSE

Undisputed.

109. Peveri and Brian Carrabes were already in Brian Carrabes's office when Plaintiff entered, that Plaintiff asked if they heard anything about his aviation interview, and that Peveri left shortly after the meeting began. (Id. 176:1-177:18; B. Carrabes Dep. 243:6-247:7, 248:10-19.)

RESPONSE

Undisputed.

110. Nearly every other aspect of this meeting is disputed. (Pl. Dep. 177:1-20, 185:14-186:2; Peveri Dep. 134:8-19, 136:17-138:20; Brian Dep. 243:6-247:7, 248:10-19, 251:6-15.)

RESPONSE

Undisputed as phrased.

111. Plaintiff testified that he was calm and never raised his voice until Peveri left; Peveri and Brian Carrabes testified that Plaintiff shouted, cursed and pointed his finger at them. (Id.)

RESPONSE

Disputed. The statement does not correlate to the citations in paragraph 110.

112. When Peveri left, Plaintiff and Brian Carrabes were the only individuals present. (Pl. Dep. 177:15-18.)

RESPONSE

Undisputed.

113. Plaintiff claims that, at some point, Brian Carrabes said, "Get the fuck out. You no longer have a job at Expeditors." (Pl. Dep. 178:5-10.)

RESPONSE

Undisputed that this is part of the evidence.

114. Brian Carrabes testified that he only told Plaintiff to get of his office and that he did not tell Plaintiff he was fired. (Brian Dep. 17:25-18:3, 19:2-5, 129:13-18, 246:2-11, 251:3-12.)

RESPONSE

Undisputed that this is the testimony of Brian Carrabes although it is irrelevant for summary judgment purpose since it is not the evidence most favorable to the Plaintiff. The Plaintiff testified that Brian Carrabes said, “"How dare you kind of come in here and ask questions?" And he said, "Get the fuck out of here. You no longer have a job at Expeditors." *MC*, p. 178. When the Plaintiff got up from the couch to leave, "Well, he got out of his seat, walked past me and pointed to the door and said, 'Get the fuck out. You no longer work here.'" *MC,* p. 186.

115. Plaintiff also claims that he asked for information about the complaints that led to his removal from the DSM role and asked if there were any complaints in his personnel file. (Pl. Dep. 177:19-178:10.)

RESPONSE

Undisputed that the Plaintiff testified to those facts.

116. When Plaintiff left Brian Carrabes's office, he gave his laptop and badge to the front desk receptionist and exited the building. (Pl. Dep. 187:22-188:9.)

RESPONSE

Undisputed.

117. When the receptionist told Peveri that Plaintiff left his laptop and badge behind, Peveri asked Brian Carrabes if he had fired Plaintiff. (Peveri 152:4-153:22.)

RESPONSE

Disputed. The statements are hearsay. Further, on February 5, 2024, Brian Carrabes told the Plaintiff that "you no longer have a job at Expeditors," *MC*, p. 178, and "You no longer work here." *Id.*, p. 186. On February 6, 2024, Peveri signed a letter in which she wrote, "Due to your unprofessional and threatening behavior, your employment at expeditors is terminated immediately." *Heinlein Aff.*, Ex. 3.

118. Brian Carrabes said he did not fire Plaintiff and that he only told Plaintiff to leave his office. (Brian Aff. ¶¶ 6-7.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

119. Peveri then texted Plaintiff and asked him to "[p]lease return to the office to finish our meeting." (Pl. Dep. 200:5-202:1, Ex. 17.)

RESPONSE

Undisputed.

120. Plaintiff did not respond to this text. (Id.)

RESPONSE

Undisputed.

121. Peveri told Plaintiff that she tried to call him, but he did not answer. (Id. 202:2-12, Pl. Dep. Ex. 17.)

RESPONSE

Disputed. The citation does not support the sentence. The Plaintiff testified in the lines cited when asked if Peveri called him, "I don't recall." *MC*, p. 202.

122. She then sent Plaintiff another text in which she asked if he was resigning, told him to call her or return to the office, and said she did not want any "misunderstandings." (Id. 202:23-203:5, Pl. Dep. Ex. 17.)

RESPONSE

Undisputed.

123. Plaintiff did not respond to this text, either. (Id.)

RESPONSE

Disputed. The citation does not support the sentence nor is there evidence that the Plaintiff either received or saw the text.

124. The next morning, Peveri texted Plaintiff that if she did not hear from him by noon, she would take his "recent actions as a resignation." (Id. 207:8-20, Pl. Dep. Ex. 17.)

RESPONSE

Undisputed.

125. At 11:06 a.m., Plaintiff texted Peveri that Brian Carrabes told him that "I [Plaintiff] no longer have a position and to leave the building." (Id.)

RESPONSE

Undisputed.

126. Plaintiff blocked Peveri after sending this message. (Pl. Dep. 208:8-17.)

RESPONSE

Undisputed.

127. Peveri's phone records show that she then texted Plaintiff that there was a "misunderstanding" and again asked him to return to the office. (Id. 207:13-24, Pl. Dep. Ex. 17.)

RESPONSE

Undisputed.

128. Plaintiff never received this text. (Id. 208:8-17.)

RESPONSE

Disputed. The Plaintiff testified, "I don't believe I ever got that text message." *MC*, p. 208.

129. Brian Carrabes also called Plaintiff after the meeting, but Plaintiff did not answer. (Pl. Dep. 196:15-23, Ex. 16.)

RESPONSE

Undisputed.

130. Brian Carrabes texted Plaintiff at 7:29 a.m. on February 6, 2024. (Id., 196:15-197:14, Ex. 16.)

RESPONSE

Undisputed.

131. In this text, Brian Carrabes told Plaintiff not to "be stupid" and asked why he would "walk away" from a well-paying job with benefits. (Id.)

RESPONSE

Undisputed.

132. Plaintiff and Brian Carrabes then exchanged additional messages, and Brian Carrabes explicitly told Plaintiff, "I suggest you answer Tracy." (Id. 199:4-200:1, Ex. 16.)

RESPONSE

Undisputed.

133. In the last two messages of this exchange, Brian Carrabes told Plaintiff that he loved Plaintiff but that Plaintiff's conduct was unacceptable and that Brian Carrabes had responsibilities both to Peveri and Expeditors, as well to Plaintiff. (Id.)

RESPONSE

Undisputed.

134. Plaintiff cannot explain why, if Brian Carrabes had terminated Plaintiff's employment during the meeting, Peveri and Brian Carrabes then texted him afterward to return to the office and told him not to "walk away" from his job. (Pl. Dep. 197:13-198:23, 201:17-202:1.)

RESPONSE

Disputed. The Plaintiff testified that at the time he was fired by his brother on February 5, 2024, he did not have a "300K job," MC, p. 197 and he "was no longer the Sales Manager." *Id*. "I wasn't making +300k anymore." *Id.*, p. 198.

135. Plaintiff did not ask Peveri or Brian Carrabes this question. (Pl. Dep. 202:23-203:5, 204:16-206:14.)

RESPONSE

Disputed. It is unclear what "this question," means. At the page cited, 204, the Plaintiff testified that he did not respond to text messages, "Because he just fired me. It was clear.it wasn't, Oh, I don't know if I was fired or not. It was very clear to get the fuck out, I had no job. I didn't take that as maybe that is not what they meant." *MC*, p. 204.

136. Plaintiff chose not to return to Expeditors after February 5, 2024. (Pl. Dep. 212:5-213:1.)

RESPONSE

Disputed. The Plaintiff was asked if he knew what would have happened if he returned to the office on February 5th or 6th and he replied, "I was demoted from my Sales Manager's job. I was then what I'll say is tortured for a good year, put into the warehouse, comments. I have this meeting, and Brian fires me. So I was in no -- there was no reason for me at this point to be like, 'I'm going to go back to the office and talk this out.'" *MC*, p. 212.

137. On February 6, 2024, Expeditors prepared a Letter of Reprimand that Peveri would have presented to Plaintiff if he returned to the office. (Pl. Dep. 195:12-16, Ex. 15.)

RESPONSE

Undisputed that Tracy Peveri signed a letter dated February 6, 2024, in which she wrote, "Due to your unprofessional and threatening behavior, your employment at Expeditors is terminated immediately," *Heinlein Aff, Ex. 3*, and that the letter is entitled a "Letter of Reprimand" for a person who was just terminated immediately.

138. Because Plaintiff never returned to the office, Expeditors placed a Post-It note on the letter stating that the letter was never given to him. (Id.)

RESPONSE

Undisputed.

139. On February 9, 2024, Expeditors sent Plaintiff a letter informing him that his employment with Expeditors had ended. (Lynch Aff. ¶ 11, Ex. 8.)

RESPONSE

Disputed. The letter of February 9, 2024, was a "standard form letter that goes out to anybody in management usually or probably above." *TP*, p.160. The primary purpose of the letter was "to make sure that the proprietary and confidential information of the company is protected? A. Yes." Id. The letter was "[n]ot unique to Michael Carrabes." *Id.*, p. 161

140. Plaintiff claims that Peveri scrutinized his "key performance indicators" or "KPIs"—metrics used to measure performance—more closely than two other female employees. (Pl. Dep. 216:2-18, 224:9-229:6.)

RESPONSE

Undisputed.

141. Expeditors did not take any alleged adverse action against Plaintiff for failure to meet his KPIs. (Peveri Aff. ¶ 30.)

RESPONSE

Disputed. The sentence does not correspond to the citation.

142. When a female employee hired as the Ocean Export Manager had issues with leading a team of people, Peveri moved this employee to a different role, where she did not have to manage people. (Id. ¶ 58.)

RESPONSE

Disputed. This sentence is not material.

143. Peveri made this decision without first placing this female employee on a PIP, because these issues were not something would be properly addressed through a PIP—the exact same approach she took with Plaintiff. (Id. ¶ 59.)

RESPONSE

Disputed. There is no reference in paragraph 59 of the Peveri affidavit to the Plaintiff.

144. Plaintiff claims that Peveri "excluded" him from "development opportunities" by not letting him take a financial training course. (Pl. Dep. 237:23-239:20.)

RESPONSE

Undisputed.

145. Peveri selected Chris Goodwin (male) to attend this training course. (Id. 239:11-20)

RESPONSE

Disputed. The deposition language cited does not indicate that Peveri "selected" Chris Goodwin to take the course.

146. Plaintiff claims that Peveri excluded him from a 2023 Christmas dinner for her management team. (Pl. Dep. 242:19-244:3.)

RESPONSE

Undisputed.

147. Plaintiff admits that other male managers attended this dinner and that he attended prior dinners, before he was removed from a management position. (Id.)

RESPONSE

Disputed. As of Dember 2023, Michael Carrabes was still the acting DSM. Nancy Bowie was not formally promoted to the DSM position until January 2024. See, SOMF ¶78.

148. Plaintiff never asked Cristie Gawlocki, the HR representative at the Boston office who maintains employee personnel files, or any other person to see his personnel file. (Id. 346:8-347:16.)

RESPONSE

Disputed. In the deposition pages cited, the Plaintiff testified that during the February 5, 2024, meeting with his brother and Peveri, "I asked for my personnel file, of what was in it. I wanted to see what was in it." *MC,* p. 346. He testified that he did not ask anyone else to see his personnel file. *MC*, p. 347.

149. After Peveri notified Plaintiff of his removal from the DSM position, she did not stop him from searching for other jobs, and she provided a favorable reference when he applied for another job within Expeditors. (Pl. Dep. 147:3-23; Peveri Aff. ¶¶ 41-42; Dale Aff. ¶¶ 6-13.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

150. Peveri has on more than one occasion throughout her tenure as District Manager reassigned a female employee's duties without first putting the female employee on a PIP. (Peveri Aff. ¶¶ 60-65.)

RESPONSE

Disputed. See, Plaintiff's Motion to Strike Portions of Affidavits Submitted in Support of the Defendants' Motion for Summary Judgment. The statement is based upon inadmissible hearsay.

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

The Plaintiff provides for the court and as Exhibit A to the Plaintiff's Opposition to the Defendants' Motion for Summary Judgment, the *Affidavit of David W. Heinlein* ["*Heinlein Aff.*"] with Exhibits 1 through 10, which are incorporated by reference.

151. As of July 1, 2010, the Plaintiff, Michael Carrabes was employed by the Defendant, Expeditors International of Washington, Inc. ["Expeditors"] as a District Sales Manager ["DSM"]. *Heinlein Aff., Ex. 1*.

**RESPONSE**: Undisputed.

152. Michael Carrabes served in that position until he was fired by the Defendant, Brian Carrabes on February 5, 2024. *Heinlein Aff., Ex. 2 (Deposition of Michael Carrabes ["MC"]),* pp. 178, 186.

**RESPONSE:** Disputed. Neither Expeditors nor Brian Carrabes fired Plaintiff. (Peveri Dep. 18:3-9; Brian Carrabes Dep. 17:25-19:5.) Further, Peveri testified that she notified Plaintiff of his removal from the DSM position in October 2022 (Peveri Dep. 18:5-9), and Plaintiff admits that he was removed from the DSM position no later than December 2022. (SUMF ¶ 65; Doc No. 132 p. 19.)

153. Peveri by letter dated February 6, 2024, told the Plaintiff that his "Employment at Expeditors is terminated immediately," *Heinlein Aff., Ex. 3, (Letter of Reprimand)* "[d]ue to your unprofessional and threatening behavior." *Id*.

**RESPONSE**: Disputed. Plaintiff never returned to Expeditors after he quit on February 5, 2024, and Peveri therefore never "told" Plaintiff anything via this letter because she did never had an opportunity to provide this letter to Plaintiff. (SUMF ¶ 138; Peveri Dep. 18:3-9, 19:23-20:20, 131:2-9; B. Carrabes Dep. 17:25-19:5.)

154. When Peveri performed performance evaluations of the Plaintiff, she was accurate, *Heinlein Aff., Ex.4 (Deposition of Tracy Peveri, ["TP"]),* p. 209, honest, *id.*, and included the most salient information about his job performance. *Id.*, pp. 209-210.

**RESPONSE**: Undisputed that Peveri was accurate and honest in performing performance evaluations of her direct reports, including Plaintiff. Disputed that she "included the most salient information about his job performance" in his evaluations because Peveri testified that there could be some issues she would address by conversation, without documenting in the evaluation. (Peveri Dep. 210:7-13.)

155. For his 2020 Employee Performance Evaluation ["EPE"], Peveri wrote under "Exceptional Customer Service," "Michael has done a great job promoting customer development and champions customer engagement through meetings and training." *Heinlein Aff., Ex.5*.

**RESPONSE**: Undisputed.

156. Under "Reliability," Peveri wrote, "Michael takes full ownership of his team." *Id.*

**RESPONSE**: Undisputed.

157. For the category entitled, "Collaboration," Peveri wrote, "Michael works well with his peer (sic) and team." *Id.*

**RESPONSE**: Undisputed.

158. Under communication, Peveri wrote, "Michael displays both professional verbal and written skills." *Id.*

**RESPONSE**: Undisputed.

159. Within a "Peer Feedback," section, Brad Muller "(Stakeholder)" wrote,

> Mike is a great Sales Manager. He cares for his team and provides guidance that drives performance. He supports the network and is always willing to participate in projects. He supports our Sales program as it evolves and he is always open to change.

*Id*.

**RESPONSE**: Undisputed.

160. Jenna Connors, a member of the Plaintiff's sales team, wrote,

> From my experience, Michael is readily available to support my requests and respects when I escalate concerns or challenges to him. We have a strong working relationship and he allows me independence in the Sales Operations role & we collaborate on many projects. He holds me accountable to expectations and yet allows me to be creative, which is greatly appreciated. His perspective is appreciated, as he shares experience and information learned on Sales program calls. I find all of these attributes to be strengths.

*Id*.

**RESPONSE**: Disputed that this fact accurately states the entirety of what Connors wrote about Plaintiff. Connors further wrote:

> I recommend more team relationship building time and on-one [sic] employee relationship building. Honestly from a Sales Operations perspective, Sales Executives need a lot of attention and positive encouragement while being held accountable to their responsibilities. Also so much of our day is currently in meetings at a tactical and strategic work level, and continuing to build on personal relationships can slip a bit.

(Heinlein Aff., Ex. 5, EXPEDITORS000116.)

161. In his 2021 EPE, under "Exceptional Customer Service," Peveri wrote, "Michael and team are focused on delivering a great customer experience." *Heinlein Aff., Ex. 6*.

**RESPONSE**: Undisputed.

162. Under "Job Execution," Peveri wrote, "Michael meets all job expectations." *Id*.

**<u>RESPONSE</u>**: Undisputed.

163. For "Reliability," Peveri noted, "Michael is well organized and does not miss any deadlines." *Id*.

**<u>RESPONSE</u>**: Undisputed.

164. For "Collaboration," Peveri wrote, "Michael works well with peers/customers and team." *Id*.

**<u>RESPONSE</u>**: Disputed only to the extent this fact misquotes this portion of the performance evaluation, which reads: "Michael works well with his peers/customers and team". (Heinlein Aff., Ex. 6, p. 85, EXPEDITORS0000097.)

165. Under "Communication," Peveri states, "Michael is always professional and timely with both written and verbal communication." *Id*.

**<u>RESPONSE</u>**: Undisputed.

166. Under "Employee Development," Peveri wrote, "Ensures team is receiving 1-1/reviews and training." *Id*.

**<u>RESPONSE</u>**: Undisputed.

167. In October 2022, Peveri told the Plaintiff that he was going to be removed from the DSM position. *MC*, p.127, *TP*, 17-18.

**<u>RESPONSE</u>**: Undisputed.

168. She told the Plaintiff that she received complaints about him working with others on his team. *MC*, p.127.

**<u>RESPONSE</u>**: Undisputed that Peveri told this to Plaintiff in October 2022. Defendants dispute any implication or suggestion that Peveri had not previously informed Plaintiff of

complaints she received from members of his sales team. (Peveri Aff. ¶ 29; Peveri Supp. Aff. ¶¶ 7-8.)

169. During the conversation, Peveri told the Plaintiff, "Hey, I think a female would be a good person to have" -- "A female would be a good person to have in this position, as they pose just different qualities that a guy doesn't on" -- "in communicating with the team," or things to that effect." *Id.*, p.128.

**<u>RESPONSE</u>**: Disputed. (Peveri Supp. Aff. ¶ 4.)

170. When the Plaintiff asked what the complaints about him were, Peveri replied, "Mike don't say anything." *Id*.

**<u>RESPONSE</u>**: Disputed. (Peveri Supp. Aff. ¶ 5.)

> 171. At the time I really was more concerned with that I just lost my job than that she actually said a female would be better at this position. And so I was really focusing on more of what just happened, what are the complaints. And then it was just odd to me that, "Oh, by the way, I believe a female would do better at your position," which was odd to me.
>
> *MC*, p.129.

**<u>RESPONSE</u>**: Defendants do not dispute that this accurately quotes an excerpt of Plaintiff's deposition. (Pl. Dep. 129:12-19.) Defendants dispute that Peveri made the statements that Plaintiff attributes to her in this excerpt of his deposition testimony. (Peveri Dep. 66:1-17; Peveri Supp. Aff. ¶ 6.)

172. Before this time, Peveri had never come to the Plaintiff to discuss anything he needed to improve upon as a DSM. *MC*, p.131.

**<u>RESPONSE</u>**: Disputed. (Peveri Dep. 66:1-17; Peveri Aff ¶ 29; Peveri Supp. Aff. ¶¶ 7-8.)

173. The Plaintiff did approach Peveri about her comment in October 2022 that she had received complaints about him as a DSM. *MC*, p. 141-142.

**RESPONSE**: Disputed. (Peveri Supp. Aff. ¶ 7.)

174. He told Tracy, "What did I do" -- along the lines of "What did I do wrong to get demoted? What were the complaints? Can you share the complaints." Because I don't know how to -- because I wanted to address it or try to fix it. And that's where I was confused or, like, "Okay, there was complaints, something that I'm not doing. What are they, and why didn't I get the opportunity to fix whatever those complaints were?" *Id*.

**RESPONSE**: Disputed. (Peveri Aff. ¶ 29.; Peveri Supp. Aff. ¶¶ 7-8.)

175. When Michael Peveri asked Peveri what the complaints were, she replied, "Let's move on." *Id.*, p. 142.

**RESPONSE**: Disputed. (Peveri Supp. Aff. ¶¶ 5, 7-8.)

176. When asked, "That's it," be defense counsel at his deposition, the Plaintiff testified, That's it. "Let's move on." And then at one of the meetings it was, "Hey, let's move on, Mike. It is what it" -- like, "We've just got to move on."

At that point it started to get like, you know, comments of, like, "Mike, who really likes you at the branch?," which I was like, "Okay. I don't know how to answer that, like who likes me at the branch." And, you know, then soon after that, like during, like, a conversation it would be like, you know, "Nancy Bowie poses a lot of these attributes of collaborating with the team, building up the team, communication skills." *Id.*, pp. 141-142.

**RESPONSE**: Undisputed that this fact generally summarizes a portion of Plaintiff's deposition. (Pl. Dep. 142:10-24.) Disputed that Peveri actually made these comments to Plaintiff. (Peveri Supp. Aff. ¶¶ 5, 7-9.)

177. Peveri then met with the Plaintiff on November 21, 2022, to discuss his 2022 EPE. *TP*, p. 222, *Heinlein Aff., Ex. 7*.

**RESPONSE**: Undisputed.

178. This review was conducted *after* Peveri told the Plaintiff that he was being removed from the DSM position. *See, TP*, pp. 17-18.

**RESPONSE**: Undisputed.

179. In that review, for the first time, Peveri notes that “Michael needs to work on district engagement and organizing of the weekly sales meeting,” *Ex. 7.*

**RESPONSE**: Defendants dispute that the November 21, 2022 meeting with Plaintiff was the first time Peveri attempted to address issues Plaintiff’s engagement, organization and management of his sales team because Peveri had met with Plaintiff before November 2022 to discuss these issues. (Peveri Dep. 66:1-17; Peveri Aff. ¶ 29.)

180. She also wrote in the 2022 EPE, “Michael works well with district management team but would like to see better collaboration with his team,” *Id.*

**RESPONSE**: Undisputed.

181. And, “Michael is professional with his written communication – would like to see that he builds better communication with the sales team.” *Id*.

**RESPONSE**: Undisputed.

182. There was no “Peer Feedback” in the 2022 EPE as was present in other, prior reviews. Compare, *Ex. 5*.

**RESPONSE**: Undisputed.

183. In the warehouse, Michel Carrabes worked, “Moving boxes, taking one box and moving it to another area, sort and seg different Skus and POs. Whatever -- well, Jennifer Muise was the distribution manager at the time, and she had me work with one of her -- I believe it was the supervisor in the warehouse, so kind of reported, went to him. And he would be like, "Do this,

Mike," or, "Hey, wait a couple of hours. We've got nothing at this time for you to help with." So he was kind of my go-to person to report to on what to do. *MC*, p. 157.

**RESPONSE**: Disputed. Plaintiff was also allowed to spend his workdays doing other things, such as looking for jobs within the company. (Pl. Dep. 157:2-21, 159:1-160:1.) Defendants further dispute whether Plaintiff showed up to work as scheduled in the warehouse. (B. Carrabes Dep. 247:18-248:9.)

184. He did nothing else at that time. *Id*.

**RESPONSE**: Disputed. Plaintiff was also allowed to spend his workdays doing other things, such as looking for jobs within the company. (Pl. Dep. 157:2-21, 159:1-160:1.)

185. After the first meeting during which Peveri demoted the Plaintiff from his DSM position there were more than five other meetings between Peveri and the Plaintiff. *Id.*, p.145.

**RESPONSE**: Undisputed.

186. Peveri did not discuss any other positions within Expeditors, *Id.*

**RESPONSE**: Disputed. (Peveri Supp. Aff. ¶ 10.)

187. Peveri did not suggest that the Plaintiff apply for any other positions within Expeditors. *Id*.

**RESPONSE**: Disputed. (Peveri Supp. Aff. ¶ 10.)

188. Peveri never told the Plaintiff, "what any of the complaints were from the sales team." *Id*.

**RESPONSE**: Disputed. (Peveri Aff. ¶ 29; Peveri Supp. Aff. ¶¶ 5, 7-8.)

189. Tracy Peveri reports to Brian Carrabes, but she runs the branch. *Heinlein Aff., Ex.8 (Deposition of Brian Carrabes, ["BC"]),* p. 207.

**<u>RESPONSE</u>**: Not disputed, to the extent this implies that as district manager, Peveri had overall responsibility for performance of the Boston branch. Disputed, to the extent this implies that Peveri made every decision and/or did not delegate decision-making authority to other managers and supervisors. (Peveri Supp. Aff. ¶ 11.)

190. "She controls who she hires, who she fires, who she wants." *Id*.

**<u>RESPONSE</u>**: Not disputed, to the extent this implies that as district manager, Peveri had the ability to make hiring and firing decisions for the Boston branch. Disputed, to the extent this implies that Peveri made every hiring or firing decision and/or did not delegate these decisions to other managers and supervisors, as appropriate. (Peveri Supp. Aff. ¶ 11.)

191. As of December 23, 2022, Michael Carrabes was paid a bonus of $432,140.18 for the year 2022. *Heinlein Aff., Ex. 9.*

**<u>RESPONSE</u>**: Undisputed that Plaintiff received bonus pool payments in the amount of $432,140.18 during the 2022 calendar year.

192. As of December 22, 2023, Michael Carrabes was paid a bonus of $166,707.25 for the year 2023. *Heinlein Aff., Ex. 10.*

**<u>RESPONSE</u>**: Undisputed that Plaintiff received bonus pool payments in the amount of $166,705.25 during the 2023 calendar year.

193. Michael Carrabes told Peveri the reason he wanted to meet with Brian Carrabes on February 5, 2024, "So we could get on the same page, why I was being treated this way, you know, so unfairly. And from the beginning of my demotion up until that point, I wanted to talk to them and see what was going on. *MC,* p. 172-173.

**<u>RESPONSE</u>**: Disputed. Plaintiff did not tell Peveri why he wanted to meet. (Peveri Dep. 143:3-17.)

194. Michael Carrabes wanted the meeting, “Because I wasn't getting answers from Tracy of some of the -- what I would bring up of why I'm being treated so unfairly, the comments, the complaints, what are the complaints. So I was asking Tracy for information on those types of questions that I had.” *MC*, p. 173.

**RESPONSE**: Disputed that Plaintiff informed Peveri or Brian Carrabes why Plaintiff wanted to meet with them. (Peveri Dep. 143:3-17; B. Carrabes Dep. 241:11-13, 242:14-16.)

195. Michael wanted his brother at the meeting. “He's the RVP. He's Tracy's boss. So he was kind of the next -- he oversees the Boston branch and the region, the Northeast Region. So he's my natural escalation point.” *Id.*, p. 174.

**RESPONSE**: Disputed. Plaintiff never informed Peveri or Brian Carrabes why Plaintiff wanted to meet with them, and Defendants therefore do not know why Plaintiff “wanted his brother at the meeting.” (Peveri Dep. 143:3-17; B. Carrabes Dep. 241:11-13, 242:14-16.)

196. When the Plaintiff arrived at the meeting Peveri and Brian Carrabes were already in Brian Carrabess’ office. *Id*., p. 176.

**RESPONSE**: Undisputed.

197. Michael opened the meeting and asked if they had any information about an aviation position in the company for which Michael Carrabes had applied. *Id*.

**RESPONSE**: Undisputed that during this meeting, Plaintiff asked about his application for the aviation position. Disputed as to Plaintiff’s characterization that he “opened” the meeting in this manner. Brian Carrabes testified Plaintiff “walked into the meeting flustered, angry; pointed at Tracy, who was sitting down, said, “I’m done with you. I’m done with you. And you, I’m done with you as a brother.’ And he was agitated and angry.” (B. Carrabes 243:6-11.)

198. Peveri "sat back in her chair, crossed her arms and said, 'Mike, why don't you tell us the status of your interview.'" *Id.*, p.177.

**RESPONSE**: Disputed. Plaintiff asked Peveri and Brian Carrabes if they had heard anything about Plaintiff's application to the aviation position, and Peveri asked Plaintiff what he had heard. (Peveri Dep. 146:22-147:8.) Peveri disputes that she "sat back in her chair, crossed her arms and said, "'Mike, why don't you tell us the status of your interview.'" (Peveri Supp. Aff. ¶ 12.)

199. Brian Carrabes responded, "I haven't heard anything, Mike." *Id.*, p.177.

**RESPONSE**: Undisputed.

200. The Plaintiff then asked the group why he was being treated unfairly, "[w]hat did I do so terribly that I got demoted? I don't have a job." *Id.*

**RESPONSE**: Disputed. (Peveri Supp. Aff. ¶ 13; B Carrabes Supp. Aff ¶ 4.)

201. Peveri responded, "What have you really done at this company? Mike, you'll be fine. You don't have family." *Id.*

**RESPONSE**: Disputed. (Peveri Supp. Aff. ¶ 14.)

202. Peveri then left the meeting ten to twenty seconds after it began. *BC*, p. 245.

**RESPONSE**: Undisputed that Peveri left the meeting shortly after it began due to Plaintiff's threatening and aggressive behavior. (Peveri Dep. 134:8-14, 135:4-6, 138:5-20.)

203. The meeting continued between Michael Carrabes and Brian Carrabes. The Plaintiff asked Brian Carrabes, "What was that all about. This is crazy." *MC*, p.177.

**RESPONSE**: Disputed. After Peveri left the meeting due to Plaintiff's threatening and aggressive behavior, Brian Carrabes asked Plaintiff what he was doing, and Plaintiff said, "You fucked

me over. This is bullshit. This is absolute bullshit that I lost my position." (Peveri Dep. 134:8-14, 135:4-6, 138:5-20; B. Carrabes Dep. 246:2-11.)

204. Brian Carrabes did not respond, *id.*, so Michael Carrabes added, "Hey, there's a Code of Conduct we all follow at Expeditors. We treat fairly, integrity, there's honesty. [Peveri] is not doing any of that, Brian. Like, what's going on?" *Id.*, pp. 177-178.

**RESPONSE**: Disputed. Plaintiff did not say, "What was that all about. This is crazy," and Brian Carrabes therefore could not respond to this alleged statement. (SUMF ¶ 203.) Brian Carrabes further denies that Plaintiff made any statement similar to the statement described in this alleged fact. (B Carrabes Supp. Aff ¶¶ 4-5.)

205. The Plaintiff then asked Brian Carrabes, "What's in my personnel file? Are there complaints in my personnel file? Can I see my personnel file." *MC*, p.178.

**RESPONSE**: Disputed. (B Carrabes Supp. Aff ¶ 6.)

206. Brian Carrabes then gets mad and aggravated because the Plaintiff was asking questions. *Id.*

**RESPONSE**: Disputed. (B Carrabes Supp. Aff ¶ 7.)

207. Brian Carrabes then replies, "How dare you kind of come in here and ask questions?" *Id.*

**RESPONSE**: Disputed. (B Carrabes Supp. Aff ¶ 8.)

208. And he said, "Get the fuck out of here. You no longer have a job at Expeditors." *Id.*

**RESPONSE**: Disputed. (B. Carrabes Dep. 17:21-18:3, 246:2-21, 251:6-12, 252:11-13.)

209. Brian Carrabes raised his voice when he said to the Plaintiff "to get the fuck out and that "You no longer have a job at Expeditors." *Id.*, p.185.

**RESPONSE**: Defendants do not dispute that Plaintiff and Brian Carrabes both raised their voices during their interaction after Peveri left the meeting on February 5, 2024 or that Brian Carrabes told Plaintiff to "get out" of his office. (B. Carrabes Dep. 246:2-21, 251:6-12, 252:11-13.) Defendants dispute that Brian Carrabes told Plaintiff, "You no longer have a job at Expeditors" or any words to that effect. (B. Carrabes Dep. 17:21-18:3, 251:6-252:6.)

210. Brian Carrabes then "got out of his seat, walked past me and pointed to the door and said, 'Get the fuck out. You no longer work here.' So it was getting up out of his seat, he opened the door, and then I walked out." *Id.*, p.186.

**RESPONSE**: Disputed. Brian Carrabes did not tell Plaintiff, "You no longer work here" or any words to that effect. (B. Carrabes Dep. 17:21-18:3, 251:6-252:6.)

211. Peveri also wrote the Letter of Reprimand dated February 6, 2024, which indicates that the Plaintiff's employment with Expeditors was "terminated immediately," due to his "unprofessional and threatening behavior." *Ex.3*.

**RESPONSE**: Disputed that Peveri wrote the Letter of Reprimand, which was written by Cristie Gawlocki. (Peveri Dep. 131:2-9.) Further disputed that the letter sets forth the reason for Plaintiff's termination because Plaintiff resigned and never returned to Expeditors' office, so this letter was never given to him. (Peveri Dep. 20:6-17.)

212. Tracy Peveri kept notes of conversations with members of the Plaintiff's sales team in composite notebooks. *TP*, pp. 155-158. Peveri has not produced any of the composite notebooks.

**RESPONSE**: Undisputed.

213. When Tracy Peveri completed performance evaluations of Michael Carrabes she prepared them in good faith. *TP*, pp. 207, 218, 219, 221, 223.

**RESPONSE**: Undisputed.

214. When Tracy Peveri completed performance evaluations of Michael Carrabes she prepared them honestly. *Id.*, pp. 209, 213, 218, 220.

**RESPONSE**: Undisputed.

215. When Tracy Peveri completed performance evaluations of Michael Carrabes she was generous. *Id.*, pp. 218, 220.

**RESPONSE**: Undisputed.

216. Tracy Peveri has no documentation of any alleged complaints from members of Michael Carrabes's sales team. *Id.*, pp. 69, 154-155, 171-173, 175, 179, 181, 184.

**RESPONSE**: Disputed, to the extent Plaintiff implies that there is no documentation of complaints about Plaintiff's management of the sales team. In Plaintiff's 2020 performance evaluation, Connors noted that Plaintiff needed to work on his team relationship building and his one-on-one employee relationship building. (Heinlein Aff., Ex. 5, p. 74.)

217. Tracy Peveri never met with Michael Carrabes to discuss or hand him the "Letter of Reprimand." *Id.*, pp. 163-167.

**RESPONSE**: Undisputed.

218. The "Letter of Reprimand" remains in the Plaintiff's personnel file with the signature of Tracy Peveri. *Id.*, pp.164, 166.

**RESPONSE**: Undisputed.

219. Tracy Peveri testified that the Plaintiff was terminated because "he left his laptop and his badge," not because of his behavior. *TP*, p. 19.

**<u>RESPONSE</u>**: Defendants dispute this characterization of Peveri's testimony. Peveri testified that she viewed Plaintiff's behavior of leaving his badge and ID at the door as Plaintiff resigning from his position. (Peveri Dep. 19:23-20:20.)

220. Tracy Peveri and Nancy Bowie first met in 2010, 2011. *Id.*, p. 59.

**<u>RESPONSE</u>**: Undisputed.

221. Tracy Peveri became friends with Nancy Bowie in 2011, 2012. *Id.*, p. 60.

**<u>RESPONSE</u>**: Undisputed.

222. They were members of the same "Mom's group," and would go out to eat together. *Id*.

**<u>RESPONSE</u>**: Undisputed that Peveri testified that she would "on occasion" go out to eat with Bowie in 2011 and 2012. (Peveri Dep. 60:10-12.) Defendants dispute this characterization of Peveri's testimony because Peveri testified she had lost touch with Bowie for "many years." (<u>Id.</u> 62:11-13.)

EXPEDITORS INTERNATIONAL OF
WASHINGTON, INC., TRACY PEVERI and
BRIAN CARRABES,

By their attorneys,

/s/ Matthew J. Lynch

Asha A. Santos, Bar No. 670861
asantos@littler.com
Matthew J. Lynch, Bar No. 689363
mlynch@littler.com
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, Massachusetts 02110
Telephone: 617.378.6000
Facsimile: 617.737.0052

The Plaintiff,
Michael Carrabes,
By His Attorney,

*/s/ David W. Heinlein, Esq.*

David W. Heinlein (BBO#550598)
HEINLEIN BEELER MINGACE
& HEINEMAN, P.C.
276 Union Avenue
Framingham, MA 01702
(508) 626-8500
dheinlein@hbmhlaw.com

**CERTIFICATE OF SERVICE**

I, Matthew J. Lynch, hereby certify that on this 9th day of October 2026, the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to all registered participants identified on the Notice of Electronic Filing and via first-class mail to all non-registered participants identified on the Notice of Electronic Filing.

*/s/ Matthew J. Lynch*
Matthew J. Lynch